ATTORNEY DISCIPLINARY PROCEEDINGS.
|,PER CURIAM*
This attorney disciplinary proceeding involves numerous counts of misconduct arising from the fifing of two sets of formal charges by the Office of Disciplinary Counsel (“ODC”) against respondent, Michael D. Callahan, an attorney licensed to practice law in the State of Louisiana, but currently on interim suspension.[1]
UNDERLYING FACTS

No. 98-DB-054

Count I

In April 1996, Stacey L. Benjamin retained respondent to represent her in a *625 personal injury matter. Subsequently, respondent misrepresented the status of the case to his client. In October 1996, respondent settled the claim for $7,881 without the prior consent of his client and failed to place any of the proceeds in trust. Respondent issued a check to his client in the amount of $2,622 from his general banking account for her portion of the settlement funds, which was returned for insufficient funds. Moreover, respondent withheld a total of $2,262 from the settlement funds for payment of his client’s medical expenses. Although respondent provided his client with copies of two checks purportedly issued on his general | ^account representing payment to the health care providers, respondent did not issue the checks or disburse the funds. Rather, he closed the general banking account.
Subsequently, respondent failed to respond to the ODC’s written requests for information regarding the allegations of professional misconduct, resulting in the issuance of a subpoena ordering his cooperation. While he complied with the subpoena compelling his appearance at a scheduled deposition, he failed to produce requested settlement documents and financial records. At some point, respondent eventually paid Ms. Benjamin her portion of the settlement proceeds.

Count II

In September 1994, Kenneth Ford retained respondent to pursue a legal malpractice claim. Respondent failed to pursue the matter, and the claim prescribed.
Subsequently, respondent failed to respond to the ODC’s written request for him to supplement his original answer to the allegations of professional misconduct, which resulted in the issuance of a subpoena ordering his cooperation. At respondent’s request, the subpoena was reissued twice. Thereafter, he neglected to appear for his scheduled deposition.

Count III

In July 1996, Betty Ann Dorsey and her son retained respondent to represent them in a personal injury matter. The defendant in the personal injury matter agreed to settle the matter and in September 1996, the defendant forwarded checks to respondent for the bodily injury claims of Ms. Dorsey and her son in the amount of $2,151.84 and $1,269.41, respectively, and for property damages in the amount of $371.50. Upon receipt of the settlement funds, respondent deposited the funds into his general bank account rather than into a trust account. Respondent withheld a total Uof $1,413.33 in medical expenses from the bodily injury settlements, but failed to pay the third party medical providers. Additionally, respondent did not provide his clients with an accounting for the settlement proceeds or disbursement.
Subsequently, respondent refused to respond to the ODC’s written requests for information regarding the allegations of professional misconduct, which resulted in the issuance of a subpoena ordering his cooperation. While he complied with a subpoena compelling his appearance at a scheduled deposition, he did not produce requested settlement documents and financial records.

Count IV

In December 1996, Mildred Lavalais retained respondent to represent her in a personal injury matter. The following month, the defendant in the personal injury matter agreed to settle the claim for a total of $2,000 and issued a check in that amount to respondent. Respondent deposited the settlement funds into his general bank account, rather than a trust account. Respondent then issued a check to his client in the amount of $356.37 for her portion of the proceeds; however, the *626 check was returned, marked “account closed.”
Subsequently, respondent failed to respond to the ODC’s written requests for information regarding the allegations of professional misconduct, which resulted in the issuance of a subpoena ordering his cooperation. While he complied with a subpoena compelling his appearance at a scheduled deposition, he failed to produce requested settlement documents and financial records.

No. 98-DB-086

Count I

| ¿Patrick Williams retained respondent to represent him in an uncontested divorce. Even though Mr. Williams and his former wife, Skashonna R. Williams, resided in South Carolina, respondent filed the petition for divorce on November 6, 1995 in the 12th Judicial District Court for the Parish of Avoyelles. Two days later, respondent filed a Verification of Petition and Waiver of Citation and Legal Delays alleging it was executed by the defendant, Mrs. Williams, in Marksville, Louisiana. On November 10, 1995, respondent notarized an affidavit averring that Mrs. Williams accepted service of the certified copy of the petition. On the same day, respondent obtained a judgment of divorce in favor of his client based on the alleged waiver of appearance by Mrs. Williams. Shortly thereafter, Mrs. Williams advised respondent that she had not received notice of the petition and had not executed the verification affidavit. She further stated she was continuously residing in South Carolina during this time and did not consent to the divorce. However, respondent refused to return Mrs. Williams’ telephone calls or answer her requests for an explanation, prompting her to file a disciplinary complaint in August 1996.
In his response to the complaint, respondent stated that prior to filing the petition he personally spoke to Mrs. Williams and that she waived personal service and agreed to the matters concerning child custody and support, although he was unable to produce any evidence of Mrs. Williams’ consent. Subsequently, respondent neglected to appear for a scheduled deposition pursuant to a subpoena.

Count II

In late 1997, Dewey Devillier retained respondent to collect two outstanding accounts. Thereafter, respondent relocated his office without notice to his client. Respondent failed to return Mr. Devillier’s telephone calls and failed to return his papers.
^Subsequently, respondent refused to respond to the ODC’s written requests for information regarding the allegations of professional misconduct, as well as failed to appear pursuant to a subpoena at a scheduled deposition.

Count III

In December 1997, David and Shirley Simmons retained respondent to represent them in a personal injury matter. On April 21, 1998, the defendant in the personal injury case agreed to settle the case for $2,000. Upon receipt of the settlement funds, respondent endorsed the draft with his clients’ signatures without their knowledge or consent, and converted the proceeds to his own use and benefit. Subsequently, he relocated his office without notice to his clients.
In sworn testimony given pursuant to a subpoena, respondent stated he advanced $900 and co-signed several loans for his clients during the course of his representation. However, he failed to comply with a subpoena ordering him to produce his clients’ files and related financial records.

*627
Count IV

In January 1998, Spellman James retained respondent to institute a bankruptcy proceeding on his behalf in federal court. Respondent accepted $875 from his client as partial payment of his $675 fee. Thereafter, respondent persuaded his client to provide him with the use of a rental car for one week in lieu of the $300 balance owed toward the fee. Respondent then incurred $987.55 in rental expenses, but advised Mr. James the credit card charges would be discharged in the bankruptcy proceeding.
In March 1998, the client asked respondent about the status of his case. Respondent informed him that the bankruptcy petition had been filed, when in fact no filing had been made. When Mr. James learned of respondent’s inaction, he | (¡terminated the representation. Subsequently, respondent refused to return his client’s file. In a sworn statement given pursuant to a subpoena, respondent admitted to the misconduct. Although he promised to promptly reimburse the amount owed to his former client and produce the client file, he failed to do either.

Count V

In March 1998, Clinton Baudin, Jr. retained respondent for $500 to effect a community property settlement with his former wife, Betty Baudin. On April 14, 1998, respondent received $4,500 from Mr. Baudin to be delivered to Mrs. Baudin in payment of the settlement. The following month, respondent told Mr. Baudin that a hearing had been set, when in fact no hearing had been set by the court. When Mr. Baudin appeared at court, respondent falsely informed him that his petition and motion had been granted. Several days later, respondent’s office was closed and his telephone had been disconnected. Mr. Baudin filed a criminal complaint against respondent.
In sworn testimony given pursuant to a subpoena, respondent admitted to the misconduct and promised to make full restitution within six months. He failed to do so.

Count VI

Bernice Dueill retained respondent to represent her in a personal injury matter. Subsequently, respondent endorsed his client’s name on four drafts totaling $1,217.70 issued by an insurance carrier in payment of medical expenses. He negotiated these drafts without her knowledge or consent, and converted the funds for his own personal use.
|7On September 1997, Ms. Dueill terminated respondent’s services. Respondent refused to forward her entire file and an accounting to her new attorney, despite repeated requests.
In sworn testimony given to the ODC pursuant to a subpoena, respondent admitted to the misconduct and promised to make full restitution within six months. He failed to do so.

Count VII

Joyce Jones retained respondent to represent .her in a personal injury matter. Subsequently, respondent endorsed his client’s name on four drafts totaling $1,247.00 issued by an insurance carrier in payment of medical expenses. He negotiated the instruments without her knowledge or consent, and converted the funds for his own personal use. When Ms. Jones terminated respondent’s services, he refused to forward her entire file and an accounting to her new attorney, despite repeated requests.
In sworn testimony given to the ODC pursuant to a subpoena, respondent admitted to the misconduct and promised to make full restitution within six months. He failed to do so.

*628
Count VIII

In 1994, Frank Texada retained respondent to represent him in a claim against the City of Bunkie, Louisiana. Respondent filed a suit for damages on his client’s behalf, but the trial court granted the defendant’s peremptory exceptions and dismissed the suit. Respondent filed a motion for appeal, but the appeal was dismissed when respondent failed to pay the appeal costs. Respondent failed to inform his client of this fact.
[ ¡¡Thereafter, respondent relocated his office without notice to his client and failed to produce his client’s file, despite repeated requests. In sworn testimony given pursuant to a subpoena, respondent admitted that he failed to advise his client that he did not file the appeal or advise him of the final disposition of his case.

Count IX

On December 8, 1998, Odell and Johnnie Woods filed a complaint against respondent concerning his failure to respond to their requests for information on the status of their son’s personal injury case. The ODC served a copy of the complaint and request for information on respondent by certified mail on December 21, 1998. Respondent failed to respond. On January 28,1999, respondent was served with a subpoena compelling his appearance at a scheduled deposition. Respondent refused to respond.
DISCIPLINARY PROCEEDINGS

No. 98-DB-054

Formal Charges

On July 30, 1998, the ODC filed formal charges against respondent in 98-DB-054. These charges alleged violations of Rules 1.1(a) (incompetence), 1.3 (lack of diligence), 1.4 (failure to communicate), 1.15(a) (failure to keep client and third party funds separate from the lawyer’s own property), 1.15(b) (failure to promptly deliver funds or property owed to a client or third party and failure to render a full accounting upon request) 1.15(c) (failure to place property subject to a dispute with another party in trust), 1.15(d) (failure to maintain interest-bearing client trust account), 1.16(a) (failure to properly withdraw from client representation), 3.4(c) (failure to comply with tribunal orders), 8.1(b) (failure to respond to a lawful demand for information | afrom a disciplinary authority), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a) (violating the Rules of Professional Conduct), 8.4(b) (commission of a criminal act adversely reflecting on a lawyer’s honesty, trustworthiness, or fitness as a lawyer), 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation), 8.4(d) (engaging in conduct prejudicial to the administration of justice) and 8.4(g) (failure to cooperate with the ODC) of the Rules of Professional Conduct. On the same formal charges were filed, this court granted a joint motion from respondent and the ODC to place respondent on immediate interim suspension. In re Callahan, 98-1966, (La.7/30/98), 717 So.2d 1127.
Respondent filed a general answer admitting to some of the allegations and denying others. Later, respondent filed a motion in limine stipulating to the facts in the formal charges and requested that the hearing be limited to the issue of sanctions. The ODC did not oppose this motion, and the hearing committee ordered that the matter be submitted on documentary evidence and written argument.

Hearing Committee Recommendation

In its report, the hearing committee concluded the formal charges were proven by clear and convincing evidence based on respondent’s stipulation of facts. It noted *629 respondent knowingly and intentionally refuses to account for or provide restitution to his clients, despite repeated promises to do so, and repeatedly misled and misrepresented facts to his clients. Moreover, it recognized respondent failed to cooperate in the disciplinary process.
|inAs aggravating factors, the committee recognized respondent’s dishonest or selfish motive, pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceedings, substantial experience in the practice of law (respondent was admitted to the bar in 1987) and obvious indifference to making restitution. The sole mitigating factor recognized by the committee was respondent’s lack of a prior disciplinary record.
Based on these factors, the committee recommended respondent be disbarred from the practice of law.

No. 98-DB-086

Formal Charges

After the charges in No. 98-DB-054 had been submitted to the hearing committee, the ODC filed nine additional counts of formal charges against respondent under No. 98-DB-086. In these charges, the ODC alleged violations of Rules 1.1(a) (incompetence), 1.2(a) (scope of representation), 1.3 (lack of diligence), 1.4 (failure to communicate), 1.5(f) (failure to refund advanced fees), 1.7 (representation of a client resulting in a conflict of interest), 1.8(e) (offering of financial assistance to client in connection with litigation), 1.15(a) (failure to keep client and third party funds separate from the lawyer’s own property), 1.15(b) (failure to promptly deliver funds or property owed to a client or third party and failure to render a full accounting upon request) 1.15(c) (failure to place property subject to a dispute with another party in trust), 1.16(a) (failure to properly withdraw from client representation),1.16(d) (failure to protect client interests upon termination of representation), 2.2 (improperly acting as intermediary with clients), 3.2 (failure to expedite litigation), 3.3 (lack of candor to a tribunal), 3.4(c) (failure to comply with tribunal orders), 4.3 (improper dealings with unrepresented person), 8.1(c) (failure to cooperate with the ODC in its Ininvestigation), 8.4(a) (violating the Rules of Professional Conduct), 8.4(b) (commission of a criminal act adversely reflecting on a lawyer’s honesty, trustworthiness, or fitness as a lawyer), 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation), 8.4(d) (conduct prejudicial to the administration of justice) and 8.4(g) (failure to cooperate with the ODC) of the Rules of Professional Conduct. Respondent failed to answer the charges. Therefore, the matter was submitted to the hearing committee on documentary evidence and written argument.

Hearing Committee Recommendation

The hearing committee concluded the formal charges were proven by clear and convincing evidence based on respondent’s failure to participate in the proceedings. It noted the exhibits submitted by the ODC established a prima facie case that respondent knowingly and intentionally converted funds owed to his clients and third parties, and has failed to provide an accounting or restitution. The committee also recognized respondent exhibited a disregard for the duties owed to his clients when he ignored his clients’ many requests to properly complete their respective representations and lied to hide his misconduct. The committee further concluded respondent’s failure to answer the charges evidenced his lack of remorse and lack of need to explain his actions, thus, evidencing a lack of respect for his clients, the court and the legal profession. It found respondent’s failure to participate in these *630 proceedings was indicative of his indifference to maintaining his license to practice law.
The hearing committee recognized the same aggravating and mitigating factors cited in disciplinary proceeding No. 98-DB-054. It further noted in aggravation, respondent’s deceptive practices during the disciplinary process.
112Based on these factors, the hearing committee recommended respondent be disbarred.

Disciplinary Board Recommendation

The disciplinary board consolidated disciplinary proceeding No. 98-DB-086 with disciplinary proceeding No. 98-DB-054 for its consideration. Subsequently, the board issued its report finding respondent violated the professional rules as charged and caused substantial injury to his clients, the public, the profession and the legal system. As evidence, it noted with regard to No. 98-DB-054, Ms. Lavalais was never paid her portion of the settlement proceeds, nor were her health care providers paid. Moreover, the health care providers of Ms. Benjamin, Ms. Dorsey and Mr. Dorsey were not paid. As to No. 98-DB-086, respondent converted the funds of Mr. and Mrs. Simmons, Mr. Baudin, Ms. Dueill and Ms. Jones and numerous third party providers and failed to reimburse amounts owed to Mr. James. Further, the board recognized respondent failed to complete or perform the work for Mr. Williams, Mr. Devillier, Mr. James, Mr. Baudin and Mr. Texada. It noted respondent’s “severe” pattern of neglect resulted in Mr. Ford’s legal malpractice suit to prescribe, and the failure to file Mr. James’ bankruptcy petition and failure to pay the third party medical providers caused great financial difficulty to his respective clients.
In addressing the issue of sanctions, the board adopted the aggravating and mitigating factors and jurisprudence cited by the hearing committees in both proceedings, as well as Standards 4.11 and 4.61 of the ABA’s Standards for Imposing Lawyer Sanctions. Also relying on Louisiana State Bar Ass’n v. Hinrichs, 486 So.2d 116 (La.1986), the board recommended respondent be disbarred from the practice of law and ordered to pay restitution to his victims prior to submission of any application for readmission.
| ^Neither the ODC nor respondent filed an objection in this court to the board’s recommendation.
DISCUSSION
Our review of the record demonstrates the ODC proved by clear and convincing evidence that respondent violated the professional rules by commingling and converting client and third party funds, neglecting client matters, failing to account for client funds, failing to maintain a client trust account, failing to properly withdraw from client representation and failing to cooperate with the disciplinary authorities. Therefore, the sole issue presented to us is the appropriate sanction for respondent’s misconduct.
In determining an appropriate sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent’s misconduct is clearly serious in nature, with the most egregious violations relating to his conversion of *631 client and third party funds. In Louisiana State Bar Ass’n v. Hinricks, 486 So.2d 116 (La.1986), we explained the typical elements which are found in a disbarment case based on conversion:
In a typical case of disbarment ... one or more of the following elements are usually present: the lawyer acts in bad faith and intends a result inconsistent with his client’s interests; the lawyer commits forgery or other fraudulent acts in connection with the violation; the magnitude or the duration of the deprivation is extensive; the magnitude of l ,4the damage or risk of damage, expense and inconvenience caused by the Ghent is great; the lawyer either fails to make full restitution or does so tardily after pressure of disciplinary or legal proceedings.
Ah of these elements are present in the instant case. Respondent’s actions plainly indicate he acted in bad faith and intended a result inconsistent with his clients’ interests. His actions caused actual damage to his client, as well as causing them expense and inconvenience, because they were deprived of the funds owed to them personally and to their medical providers. Respondent has made no serious efforts at restitution, other than paying Ms. Benjamin her funds after the disciplinary proceedings had been instituted.
While the conversion charges alone would probably support disbarment, we find there are other equally disturbing professional violations. Respondent’s execution of a fraudulent waiver of service in connection with Mr. Williams’ divorce proceedings indicates a serious lack of moral fitness on his part. Likewise, his numerous misrepresentations to his clients and his decision to close his office, with no notice whatsoever to his clients, shows a shocking disregard for the welfare of his clients.
As aggravating factors, we recognize respondent’s dishonest or selfish motive, pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceedings, substantial experience in the practice of law and obvious indifference to making restitution. The sole mitigating factor is respondent’s lack of a prior disciplinary record. Under these circumstances, we see no reason to deviate from the baseline sanction of disbarment.
Accordingly, we will accept the recommendation of the disciplinary board, and disbar respondent from the practice of law.
^DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and the record filed herein, it is the decision of the court that the disciplinary board’s recommendation be adopted.
Accordingly, it is ordered that the name of Michael D. Callahan be stricken from the rolls of attorneys and that his license to practice law in the State of Louisiana be revoked. Respondent is ordered to provide an accounting to his clients and make full restitution. All costs and expenses of these proceedings are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest commencing thirty days from the date from the finality of the court’s judgment until paid.

 Knoll, J. recused.

. On July 30, 1998, respondent was put on interim suspension for some of the misconduct at issue in the instant disciplinary matter. In re Callahan, 98-1996 (La.7/30/98), 717 So.2d 1127.