ATTORNEY DISCIPLINARY PROCEEDINGS
hPER CURIAM.*
This attorney disciplinary proceeding arises from two counts of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Michael D. Callahan, an attorney licensed to practice law in the State of Louisiana.
PRIOR DISCIPLINARY HISTORY
Respondent was admitted to the practice of law in 1987. Between 1996 and 1998, he engaged in misconduct unrelated to the instant proceedings involving neglect of legal matters, failure to account for and return unearned fees, failure to withdraw from representation, commingling and conversion of client and third party funds, and failure to cooperate with the ODC. As a result, respondent was placed on interim suspension on July 30,1998. In re: Callahan, 98-1996 (La.7/30/98), 717 So.2d 1127. He was subsequently disbarred for this conduct. In re: Callahan, 00-3357 (La.3/23/01), 782 So.2d 624 (“Callahan I ”).
UNDERLYING FACTS

Hardison Matter

Prior to his interim suspension in Callahan I, respondent represented Dorothy Hardison in a worker’s compensation matter. After respondent was interimly suspended on July 30, 1998, he did not withdraw from the representation of Ms. 1 ¡.Hardison as required by this court’s rules *730 nor did he advise her he could no longer represent clients. Instead, he continued to represent Ms. Hardison by engaging in ongoing settlement negotiations on her behalf for over a year after his suspension was imposed by this court.
Additionally, in April, 1999, respondent associated himself with another attorney, Tommy Gipson, for purposes of attending a mediation hearing on behalf of Ms. Har-dison. Respondent did not advise Mr. Gipson of his suspension.

Rachal Matter

In April, 1997, Charles and JoAnn Ra-chal retained respondent to handle the successions of Alva Joseph Marcotte and Angeline Marcotte. Respondent advised Mr. Rachal that he would have to pay a total of $177.25 in inheritance taxes due in both succession matters. Mr. Rachal provided this amount to respondent. In fact, however, no taxes were assessed in Angeline Marcotte’s succession, and $106.25 was only due relative to Alva Marcotte’s succession.
Respondent forwarded a check to the Louisiana Department of Revenue and Taxation in the amount of $106.25 for payment of the taxes. However, the check was returned for insufficient funds. Subsequently, respondent abandoned his client without paying the taxes or completing the legal matters. Respondent further failed to refund the funds entrusted to him by Mr. Rachal for payment of the taxes.
In December, 1999, Mr. Rachal filed a complaint with the ODC. Respondent failed to comply with the ODC’s request for information regarding this complaint.

Criminal Conviction

On July 13, 1999, respondent entered a plea of guilty in the 12th Judicial District Court for the Parish of Avoyelles to the misdemeanor charge of theft of an ^amount not in excess of $500, in violation of La. R.S. 14:67. The conviction stemmed from conduct at issue in Callahan I, involving respondent’s intentional failure to refund an unearned legal fee to a client. Respondent was sentenced to pay a fine of $300 and $110 in costs.[1] Respondent neglected to advise the ODC of his conviction as required by the rules of this court.
DISCIPLINARY PROCEEDINGS
After investigation, the ODC filed separate counts of formal charges against respondent.[2]
With respect to the Hardison matter, the ODC alleged violations of Rules 5.5(a) (unauthorized practice of law), 8.4(a) (violating the Rules of Professional Conduct), 8.4(b) (commission of a criminal act adversely reflecting on a lawyer’s honesty, trustworthiness, or fitness as a lawyer), 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresenta *731 tion) and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct.
As to the Rachal matter and the criminal conviction matter, the ODC alleged respondent’s conduct violated Rules 1.3 (lack of diligence), 1.4 (failure to communicate), 1.5(f)(4) (failure to refund client funds), 1.15(b) (failure to promptly account for and deliver funds or property owed to a client or third party), 1.16(a) |4(failure to withdraw from representation of a client when representation results in professional misconduct), 1.16(d) (failure to protect client interests upon termination of representation), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.3 (failure to report professional misconduct), 8.4(a) (violating the Rules of Professional Conduct), 8.4(b) (commission of a criminal act adversely reflecting on a lawyer’s honesty, trustworthiness, or fitness as a lawyer), 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation), 8.4(d) (engaging in conduct prejudicial to the administration of justice) and 8.4(g) (failure to cooperate with the ODC) of the Rules of Professional Conduct.
Respondent did not file an answer. Accordingly, the charges were deemed admitted.

Recommendations of the Hearing Committees

The hearing committee which presided over the Hardison matter recognized the formal charges were deemed admitted and proven by clear and convincing evidence.[3] As mitigating factors, the committee noted remorse and the absence of any dishonest or selfish motive. It recognized in aggravation respondent’s prior disciplinary offenses, pattern of misconduct, multiple offenses and substantial experience in the practice of law. Applying these factors to the baseline sanction of disbarment, the committee concluded disbarment is appropriate under the facts.
The hearing committee which presided over the Rachal and criminal conviction matters likewise recognized the formal charges were deemed admitted and, thus, proven by clear and convincing evidence.[4] Recognizing respondent’s misconduct Isstemmed from the conversion of client funds and a criminal conviction (also involving conversion of client funds), the committee recommended that respondent be disbarred from the practice of law, commencing from the expiration of the disbarment imposed in Callahan I. The committee did not cite any jurisprudential or statutory authority in support of its proposed sanction.

Recommendation of the Disciplinary Board

The disciplinary board consolidated the two sets of formal charges and addressed them in a single recommendation. The board found all three charges were proven by clear and convincing evidence, based on *732 the deemed admitted order and other documentary evidence in the record.
In fashioning a sanction, the board observed the misconduct in the Rachal matter and the criminal conviction matter took place in 1997 and 1998, within the same general time frame as the misconduct subject of Callahan I. Relying on In re: Vaughan, 01-1948 (La.10/26/01), 801 So.2d 1058,[5] the board determined, although respondent should be disbarred for this conduct, the disbarment should run concurrently with his disbarment in Callahan I. However, the board found the misconduct in the Hardison matter took place in 1999 and 2000 and, thus, was not encompassed by the conduct in Callahan I. The board recommended that respondent |fibe disbarred for this misconduct, commencing from the expiration of the disbarment imposed in Callahan I. It further proposed respondent be ordered to provide an accounting and payment of restitution.
Respondent filed an objection to the board’s findings and recommendation. The matter was docketed for briefing and argument in accordance with Supreme Court Rule XIX, § 11(G).
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343, 348; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444, 445 (La.1992). While we are not bound in any way by the findings and recommendations of 'the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
The record supports the hearing committees’ findings that the charges against respondent have been proven by clear and convincing evidence. In the Hardison matter, it is undisputed that respondent continued to represent his client after he was placed on interim suspension by this court. In the Rachal matter, respondent neglected a legal matter and converted client funds. Respondent’s criminal conviction involved conduct that directly reflects on his moral integrity.
Having found evidence of professional misconduct, the sole issue presented for our consideration is the appropriate sanction for respondent’s actions. In determining]^ sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
While respondent’s actions in the Rachal matter and criminal conviction matter would warrant disbarment, the board correctly found that the underlying facts in *733 these matters arose during the same general time frame as respondent’s misconduct in Callahan I. In Louisiana State Bar Ass’n v. Chatelain, 573 So.2d 470 (La.1991), we declined to impose an additional disbarment on a previously-disbarred attorney based on conduct which occurred during the same time frame as the earlier disbarment. We observed:
Since the attorney-respondent cannot control the timing of the institution of disciplinary proceedings, it is generally inappropriate to disbar a previously disbarred attorney an additional time when the violations at issue occurred before or concurrently with the violations which resulted in the initial disbarment. When a second disciplinary proceeding against an attorney involves misconduct which occurred during the same time period as the first proceeding, the overall discipline to be imposed should be determined as if both proceedings were before the court simultaneously. See 1 Lawyers’ Manual on Professional Conduct 466 (1984); Matter of Thompson, 492 A.2d 866 (D.C.App.1985).
Chatelain, 573 So.2d at 471, n. 2.
We believe a similar approach is appropriate in the instant case. Accordingly, we decline to disbar respondent for a second time based on the misconduct in the Radial matter and his criminal conviction. Instead, we will adjudge respondent guilty of additional violations based on these matters which warrant disbarment and which Iswill be added to his record for consideration in the event he applies for readmission after becoming eligible to do so.
The Hardison matter requires a different analysis. The facts of this charge involve the unauthorized practice of law which arose after the interim suspension imposed in Callahan I. By its nature, this conduct had to arise after the Callahan I misconduct and could not have been charged. Therefore, we must impose separate discipline for this misconduct.
The unauthorized practice of law by a suspended or disbarred attorney is very serious misconduct. Our legislature has made it a felony to engage in such conduct. La. R.S. 37:213. Likewise, we have listed the unauthorized practice of law by a suspended or disbarred attorney as a possible ground for permanent disbarment under the Guidelines Depicting Conduct Which Might Warrant Permanent Disbarment contained in Appendix E to Supreme Court Rule XIX.[6]
In general, when the attorney has manifested a conscious intent to flout the authority of this court by practicing after being prohibited from doing so, we have not hesitated to impose disbarment. See, e.g., In re: Jones, 99-1036 (La.10/19/99), 747 So.2d 1081 (attorney disbarred for engaging in the unauthorized practice of law on four occasions, after being suspended in the past for similar misconduct). However, not all instances of the unauthorized practice of law warrant the most severe sanction. For example, in In re: Ellis, 99-2483 (La.9/15/99), 742 So.2d 869, we imposed a ninety-day suspension on a previously suspended attorney who failed to remove the “attorney at law” designation from his office. See also In re: Withers, 99-2951 (La. 11/19/99), 747 So.2d 514 (attorney suspended for six months, followed by an eighteen-month period of probation, for representing a client while ineligible to do so).
*734 Recently, we considered two cases which fell between those two extremes, In re: Audwin Jackson, 02-3062 (La.4/9/03), 843 So.2d 1079, and In re: Charles Williams, 02-2698 (La.4/9/03), 842 So.2d 353. In those cases, the suspended attorneys, ostensibly acting as paralegals, participated in out-of-court proceedings such as depositions and sworn statements. We found that, while these attorneys were clearly engaged in unauthorized practice of law, they did not display an obvious intent to flout the authority of this court and did not have dishonest or selfish motives. As discipline, we imposed suspensions of two years, with all but one year and one day deferred.
In the instant case, respondent’s actions following his interim suspension consisted largely of engaging in settlement negotiations in a worker’s compensation matter. The record does not indicate that he appeared on behalf of his client in any proceedings. While respondent’s actions unquestionably violate Rule 5.5(a), we do not believe his actions manifest an intent to the defy the authority of this court.
Accordingly, we find the baseline sanction for respondent’s actions in the Har-dison matter is a suspension from the practice of law for a period of two years. As aggravating factors, we recognize respondent’s prior disciplinary record and his substantial experience in the practice of law. In mitigation, we identify remorse and lack of a dishonest or selfish motive. Considering all these factors, we conclude the appropriate sanction for the misconduct in the Hardison matter is a suspension of two years, with three months deferred, to commence upon the date respondent is eligible to seek readmission from his disbarment in Callahan I.
_JiflDECREE
Upon review of the findings and recommendation of the hearing committee and disciplinary board, and considering the record, it is ordered that Michael D. Callahan be adjudged of additional violations warranting disbarment for his conduct in the Rachal matter and for his conduct resulting in a conviction for misdemeanor theft. These violations shall be added to his record for consideration in the event he seeks readmission from the disbarment imposed in In re: Callahan, 00-3357 (La.3/23/01), 782 So.2d 624. For the conduct in the Hardison matter, it is ordered that respondent be suspended from the practice of law for a period of two years, with three months deferred. This suspension shall commence on the date respondent is eligible to seek readmission from the disbarment imposed in In re: Callahan, 00-3357 (La.3/23/01), 782 So.2d 624. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

 Retired Judge Robert L. Lobrano sitting as Justice Ad Hoc in place of Knoll, J. recused.

. When attempting to serve respondent with a subpoena in connection with the Rachal matter subject of Count I, the ODC learned respondent had been arrested in April, 2000 on three outstanding arrest warrants for theft, forgery and issuance of worthless checks. The ODC followed the criminal proceedings, part of which culminated in a bill of information for felony theft involving an amount in excess of $500. However, the charge was reduced and respondent pled guilty to misdemeanor theft of an amount of less than $500 pursuant to a plea agreement. As stated, the conviction stemmed from respondent's failure to refund unearned legal fees to a client. The client was Clinton Baudin, Jr., who gave $4,500 to respondent for payment to Mr. Bau-din's wife to effect a community property settlement. Rather than delivering the funds as directed, respondent converted the funds to his own use. This professional misconduct was subject of Callahan I.

. The ODC filed one set of formal charges in the Hardison matter and a separate set in the Rachal and criminal conviction matters.

. The following violations were deemed admitted and, thus, proven by clear and convincing evidence: Rules 5.5(a), 8.4(a), 8.4(b), 8.4(c) and 8.4(d) of the Rules of Professional Conduct.

. The following violations were deemed admitted and, thus, proven by clear and convincing evidence: Rules 1.3, 1.4, 1.5(f)(4), 1.15(b), 1.16(a), 1.16(d), 8.1(c), 8.3, 8.4(a), 8.4(b), 8.4(c), 8.4(d) and 8.4(g) of the Rules of Professional Conduct.
The hearing committee erroneously stated Rule 1.15(f)(6), rather than Rule 1.15(f)(4), had been proven. Respondent was not charged with a violation of Rule 1.15(f)(6). Additionally, it neglected to cite that Rule 1.15(b) had been proven. By all indications, these were simply mistakes on the part of the hearing committee, rather than any intentional legal findings.

. In Vaughan, this court stated:
When a second disciplinary proceeding against an attorney involves misconduct which occurred during the same time period as the first proceeding, the overall discipline to be imposed should be determined as if both proceedings were before the Court simultaneously.

. Guideline 8 of Appendix E provides:
Following notice, engaging in the unauthorized practice of law subsequent to resigning from the Bar Association, or during the period of time in which the lawyer is suspended from the practice of law or disbarred.