*540 ATTORNEY DISCIPLINARY PROCEEDINGS
|1PER CURIAM. *
This attorney disciplinary proceeding arises from five counts of formal charges the Office of Disciplinary Counsel (“ODC”) filed against respondent, Robert E. Patrick, an attorney licensed to practice law in the State of Louisiana.[1] The charges allege respondent failed to maintain an appropriate balance in his client trust account, then modified copies of bank statements he produced to the ODC in an attempt to hide his wrongdoing.
UNDERLYING FACTS

Count I

Respondent served as closing notary in a real estate transaction on August 16, 1996, involving Kathy S. Kingsland, the seller. The transaction resulted in the production of a check in the amount of $22,275.00. Respondent was to use $15,-709.26 to pay off Ms. Kingsland’s mortgage, and at least $2,920.00 was owed to Ms. Kingsland. Respondent did not pay off the mortgage until October 18, 1996, and he did not completely disburse the remaining funds from the transaction until December of 1996. Between August 16 and October 18, 1996, the balance on respondent’s trust account fell below $19,-415.00, the minimum amount that should have remained before the appropriate disbursements had taken place.

_J¡Count II

In response to Ms. Kingsland’s complaint, respondent attached copies of purported bank statements from his trust or escrow account and submitted these to the ODC. However, the statements were altered in the following ways: respondent altered the September statement by changing the correct new balance of $15,-403.45 to reflect a false balance of $25,-898.28 on page one, and by removing the periodic balances from page two; the October, 1996 statement was altered to change the correct balance of $15,408.45 to an incorrect balance of $25,898.28 on page one, and by removing the periodic balances from page two of the statement.

Count III

The ODC served respondent with a subpoena, issued pursuant to the authority of the Supreme Court of Louisiana, ordering him to appear before the ODC on February 27, 1997 to testify and to produce financial records relating to Ms. Kings-land’s complaint. Respondent failed to appear and testify pursuant to the subpoena.

Count IV

On June 5, 1995, respondent settled a personal injury case on behalf of Yolanne B. Mitchell, and he withheld from the settlement proceeds the sum of $628.72 to pay the England Masse Chiropractic Clinic. The clinic rejected this amount when tendered, claiming it was only a partial payment. Furthermore, that amount was submitted to the clinic on or about February 13, 1997, well after the ODC had instigated its investigation. Respondent should have maintained this amount in his trust account between June 9, 1995 and February 13, 1997; however, his balance fell below $628.72 on several occasions between June 9, 1995 and February 29, 1996.[2]

Count V

In response to Ms. Mitchell’s complaint, respondent produced copies of bank statements from his trust account covering the *541 period between June 1, 1995 and February 29, 1996. |aThe bank statements had been altered as follows: respondent removed the periodic balances from each page two of the June, 1995 through February, 1996 monthly bank statements, and also removed the NSF and overdrawn fee charges from the November, 1995 statement; respondent altered the August and September, 1995 statements by changing the correct balance of $271.54 to reflect a balance of $3,892.35; respondent altered the October and November, 1995 statements to remove the correct balance of $13.73 to reflect an incorrect balance of $13,463.80; respondent also altered the November and December, 1995 statements by removing a correct balance of $356.03 and replacing it with a false amount of $6,670.60.
DISCIPLINARY PROCEEDINGS

Formal Charges

The ODC instituted formal charges against the respondent, alleging violations of Rule 1.3 (reasonable diligence); Rule 1.15(a)(b)(c) (safekeeping of client property); 3.1 (meritorious claims and contentions); Rule 3.3(a)(l)(2) and (4) (making false statements of fact or law to a tribunal, offering evidence the lawyer knows to be false); Rule 3.4(a)(b)(c) (unlawfully obstructing another party’s access to evidence, falsifying evidence, and knowingly disobeying an obligation under the rules of a tribunal); 8.1(a)(b)(c) (knowingly making false statements of material fact or failing to disclose material facts, and failing to cooperate with a disciplinary investigation); and 8.4(a)(b)(c)(d) and (g) (violating the Rules of Professional Conduct, committing a crime that reflects adversely on the lawyer’s honesty, engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation, engaging in conduct that is prejudicial to the administration of justice, and failing to cooperate with the Committee on Professional Responsibility) of the Rules of Professional Conduct, as well as Supreme Court Rule XIX, § 9(c).[3] After the committee granted respondent an 14extension of time, he answered by denying all the charges against him. Thereafter, the hearing committee conducted a formal hearing.

Hearing Committee Recommendation

The hearing committee submitted an extensive analysis of respondent’s conduct concerning the Kingsland and Mitchell complaints. The committee determined the record conclusively reveals that respondent commingled and converted funds held in trust for third parties.
As to the Kingsland transaction (Count I), the committee found respondent received $22,275.00. He was entitled to withdraw a fee of $1,535.00 and to pay a realtor’s commission of $1,260.00.[4] Thus, between the date of receiving the check (August 16, 1996) and the date of paying off the mortgage (October 18, 1996), respondent should have maintained a balance of at least $19,480.00. However, on a substantial number of days, respondent’s balance was less than $19,480.00. The com *542 mittee determined the record conclusively reveals that respondent commingled and converted funds held in trust by him for third parties, resulting in a violation of Rule 1.15 of the Rules of Professional Conduct.
With regard to the Mitchell complaint (Count IV), the committee found the record contained a disbursement sheet executed on June 5,1995, in which respondent had withheld $1,257.45 as fees owed to England Masse Chiropractic Clinic. However, a subsequent disbursement sheet was allegedly executed four days later in which the amount shown as expenses payable to England Masse had been reduced to $628.72. Although the committee did not know the reason for two different disbursement sheets, it determined that at the very least, respondent should have maintained $628.72 in his trust account between June 9, 1995 and February 10, 1997, the day on which the medical lien was satisfied. However, respondent failed to maintain that balance, and the | shearing committee found that on a substantial number of days the respondent’s balance was below $628.72.[5]
As to Counts II and V relating to the submission of falsified evidence, the committee found an analysis of the deposits, withdrawals, and balances the respondent submitted were irreconcilable with the records subpoenaed from the Hibernia Bank. The hearing committee found a number of discrepancies, as outlined by the ODC in its brief. The committee indicated that when the respondent was confronted with the discrepancies, he explained that “from time to time various bank balances do not coincide with each other .... you can review the bank’s own records and it will show a monthly average balance from month to month which exceeds the amount owed to the health care provider. I do not agree with the bank’s calculations, thus I incorporated other procedures that assist me in maintaining a better accounting procedure.” The committee also noted that respondent had initially blamed the discrepancies on an accountant, “Terrence Nesbitt,” whom the ODC’s investigator was never able to -locate, and who never appeared to testify on respondent’s behalf. In a separate letter, respondent then implied that the discrepancies should be blamed on his three secretaries, who have all “bought homes and new cars” since they had been working for him.
The committee rejected each of the explanations respondent offered to explain the discrepancies in the bank statements, noting that in other past disciplinary matters, respondent had attempted to place the blame on his office staff. The committee indicated it had an opportunity to closely observe respondent’s testimony and his demeanor, and it did not find his explanations to be believable. The committee took note that the only person to gain from the alterations was Mr. Patrick and found that either he or someone at his direction altered the bank records in an attempt to prevent the ODC from detecting the commingling and conversion of funds.
With regard to Count III, failing to hon- or a subpoena to appear and produce financial records, the committee determined there was no clear and convincing evidence indicating the respondent failed to cooperate, since he had mailed the records prior to the hearing date, and in the past that had been sufficient. The hearing committee determined the allegations in Count III were without merit.
|fiIn sum, the committee determined by clear and convincing evidence that the respondent had violated Rules 1.15, 3.3, and 3.4 of the Rules of Professional Conduct, as outlined in Counts I, II, IV, and V in the formal charges.
Referring to the ABA Standards for Imposing Lawyer Sanctions, the Commit *543 tee noted that under Standard 4.11, disbarment is appropriate for an attorney who fails to preserve a client’s property and knowingly converts the property, causing injury or potential injury to a client. Standard 6.11 indicates that disbarment is appropriate when a lawyer submits false evidence with the intent to deceive the tribunal, makes a false statement, submits a false document, and causes significant or potentially significant adverse effects on the legal proceeding. As such, the committee found the baseline sanction to be disbarment.
Under Standard 9.22, the committee found the following aggravating factors: prior discipline,[6] pattern of misconduct, vulnerability of the victims, and substantial experience in the practice of law. The committee found no factors in mitigation.
The committee indicated that with the exception of the attorney-client privilege, “there is no higher duty that an attorney owes to his client than to safeguard that property entrusted by the client to the attorney.” The committee conclusively established that respondent treated his client trust accounts as his own, and he submitted false evidence to cover up his wrongdoing and to obstruct the disciplinary process. Finding respondent’s conduct has caused “real harm to the respondent’s clients, to the public and to the judicial system”, the committee indicated the only proper remedy is disbarment and recommended that respondent be disbarred.
The ODC did not object to the findings and recommendation of the hearing committee. Respondent filed a motion for a continuance of the proceedings before the disciplinary board, which was denied.
1 tDisciplinary Board Report
The disciplinary board agreed with the findings of the hearing committee, finding the charges of commingling and conversion and of intentionally submitting altered records were proven by clear and convincing evidence. The board found that respondent effectively treated his client trust account as his own and submitted false evidence in an attempt to cover up his wrongdoing and obstruct the disciplinary process. Because his conduct has caused real harm to his clients, the public, the judicial system, and the profession, it recommended that respondent be disbarred. It further recommended that respondent be assessed with all costs and expenses of these proceedings, with legal interest to commence running thirty days from the date of finality of the court’s judgment until paid.
Neither respondent nor the ODC filed any objection in this court.
DISCUSSION
The record supports the findings of the hearing committee and disciplinary board. Respondent clearly commingled and converted client funds, then submitted false evidence in an attempt to cover up his wrongdoing. Such conduct demonstrates he has little regard for his client’s welfare or his professional obligations as a member of the bar of this state. Under these circumstances, we conclude disbarment is the appropriate sanction.
DECREE
Upon review of the findings and recommendations of the hearing committee and the disciplinary board, and after consider *544 ation of the record filed herein, it is the decision of the court that the name of Robert E. Patrick be stricken from the roll of attorneys, and that his license to practice law in the State of Louisiana be revoked. Respondent is ordered to make restitution to his clients. All costs and expenses of these proceedings are assessed against respondent, in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence running thirty days from the date of finality of this court’s judgment until paid.

 Marcus, J. not on panel. Rule IV, Part II, § 3.

. On March 24, 1999, this court placed respondent on interim suspension in 99-0410 (La.3/24/99), 733 So.2d 1180. The charges in the instant matter are unrelated to those mentioned in the interim suspension proceedings.

. The record includes bank statements from June, 1995 through February, 1996. In the Kingsland matter, records involving the same trust account from September and October of 1996 were also included, but those statements are not relevant to this specific charge.

. Supreme Court Rule XIX, § 9(c) provides:
It shall be a ground for discipline for a lawyer to:
willfully violate a valid order of the court or the board imposing discipline, wilfully fail to appear before the board for admonition pursuant to Section 10(A)(5), or knowingly fail to respond to a lawful demand from a disciplinary authority, except that this rule does not require disclosure of information otherwise protected by applicable rules relating to confidentiality nor disclosure of information where the respondent urges a bona fide claim of privilege against testifying under the Constitution of the United States or of the State of Louisiana.

. Mrs. Kingsland steadfastly asserts in her correspondence included in the record that respondent was NOT entitled to subtract $1535 in attorney's fees, since all attorney’s fees were to be payed by the buyer (who paid respondent $275 in fees for his handling of the transaction). Mrs. Kingsland contends Mr. Patrick owes her an additional $1,666 from the sale of her property for the erroneously subtracted attorney's fees and for respondent’s failure to resolve the property tax issues as Ms. Kingsland had directed.

. The committee noted that between August 11-14, 1995, the account showed a negative balance of between -$150.14 and -$217.29.

. Respondent was admonished in 91-ADB-030 for violating Rules 1.15(a) and 5.3(a)(b)(c) of the Rules of Professional Conduct for making personal child support payments with checks drawn on his client trust account. In 95-B-1621, this court suspended the respondent for 90 days, deferred, for misleading two clients. In each of these disciplinary matters, respondent claimed he had no intention to commit wrongdoing, and he blamed the problems on his office staff. In 95-ADB-084, respondent was admonished for violating Rules 1.1(a), 1.4(b), and 1.5(c) of the Rules of Professional Conduct, for failing to properly handle tutorship proceedings, failing to advise his clients that all expenditures on behalf of the minor had to be approved by the court, and for collecting a contingency fee without a written contract.