*720 ATTORNEY DISCIPLINARY PROCEEDINGS
JjPER CURIAM.*
This attorney disciplinary proceeding arises from a total of nine counts of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against Jeffrey P. Le-Blanc, an attorney licensed to practice law in the State of Louisiana, but currently suspended.[1]
UNDERLYING FACTS
98-DB-074

Count I

The heirs of Harold Thomas Shealy hired respondent to handle Mr. Shealy’s succession, which included the sale of real estate. Respondent agreed to hold $27,373 in sale proceeds in an escrow account pending resolution of a dispute among the heirs. The closing occurred on May 30, 1997, and by November 1997, respondent’s escrow account had fallen below the original sum necessary to pay all the heirs’ claims. Through January 1, 1998, respondent’s escrow account balance never exceeded $200 and from July 1997 forward, the balance in his separate trust | ¡.account did not exceed $3,500. Respondent has provided restitution for some of the converted funds, but $10,000 of the original escrowed funds remains unpaid.

Count II

In March 1994, James Underwood paid respondent an advance fee in the amount of $750 to represent him in connection with a community property settlement Thereafter, respondent did not perform any work in the matter, failed to communicate with his client, and failed to return the unearned fees.

Count III

In November 1996, Marlaine M. Bellan-ger retained respondent to open the succession of Daniel Stephens Miller. On April 21, 1997, Ms. Bellanger retained respondent to open the succession of Elaine Ray Miller. Respondent agreed to handle the matters with the understanding he would be paid when he completed the work. However, he failed to perform any work in the matter.
In September 1997, respondent was suspended from the practice of law by this court in In re: LeBlanc, 97-1056 (La.9/19/97), 699 So.2d 378. He did not notify Ms. Bellanger of his suspension *721 from the practice of law, as required by Rule XIX, § 26, nor did he return her files.

Count TV

In July 1997, Don Wayne Brumfield, a New Mexico resident, and his siblings retained respondent to handle the succession of their mother, including the sale of real estate. Respondent deposited $146,000 in sale proceeds into an escrow account at Deposit Guaranty National Bank on October 23, 1997, and paid three of the five | asiblings their respective pro rata shares of $29,219. The account should have reflected a balance of $58,438, however, after respondent paid one of the remaining siblings his portion, the account’s balance was $10,644.21, which was insufficient to satisfy Mr. Brumfield’s share. Subsequently, respondent obtained funds to satisfy the balance owed to Mr. Brumfield. On November 13, 1997, respondent made full restitution to his client.

Count V

Gregory K. Adams retained respondent to represent him in connection with a real estate purchase at a sheriffs sale. Although Mr. Adams repeatedly requested that respondent obtain a quitclaim deed from the original seller, respondent failed to do so, and did not communicate with his client regarding the matter.
99-DB-005

Count I

In 1996, Robbie Shove paid respondent a $700 advance fee to handle a real estate transaction. Respondent failed to communicate with his client and took no steps toward completing the matter. Respondent also refused to return the unearned fee to Mr. Shove, nor did he return his file.

Count II

In 1992 or 1993, Sharon Johnson Populous paid respondent a $1,900 advance fee to represent her in a child custody case. He later agreed to handle a related criminal matter and assist her in connection with a garnishment matter. Thereafter, respondent did not return Ms. Populous’ phone calls, failed to take any steps in 14PreParation of the child custody hearing, an(^ took no steps to represent her on the criminal charge or in removing the garnishment.

Count III

Emile and Vetta Galloway retained respondent as their closing attorney in a real estate transaction. Respondent put $15,440 in an escrow account for his clients but failed to remit the funds to them.

Count TV

The ODC alleges respondent has consistently failed and refused to cooperate with its ongoing investigation. The ODC forwarded notices of the complaints to respondent, however, he refused to accept the certified mail or accepted it and refused to respond. Additionally, respondent failed to honor the deposition subpoenas which were personally served on him and did not appear at the scheduled hearings.
DISCIPLINARY PROCEEDINGS

Formal Charges

After investigation, the ODC filed a total of nine counts of formal charges against respondent alleging violations of Rules 1.3 (lack of diligence), 1.4 (failure to communicate), 1.5 (failure to return unearned fees), 1.15 (commingling and conversion of client funds), 8.1(c) and 8.4(g) (failure to cooperate with the ODC), 8.4(b) (commission of a criminal act adversely reflecting on a lawyer’s honesty, trustworthiness, or fitness as a lawyer), and 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation) of the Rules of Professional Conduct.
*722 |flRespondent did not file an answer. Accordingly, the hearing was limited to documentary evidence. The ODC submitted evidence and a pre-hearing memorandum; respondent made no filing.

Hearing Committee Recommendation

After consideration of the evidence, the hearing committee found respondent violated the Rules of Professional Conduct as charged and that the ODC proved the formal charges by clear and convincing evidence. The committee determined respondent’s conduct violated duties owed to his clients, caused them actual injury, and reflected intentional misconduct. It also pointed out the record does not support any mitigating factors. Noting respondent’s prior disciplinary record[2] and citing jurisprudence from this court, the committee recommended respondent be disbarred and ordered to pay restitution.

Disciplinary Board Recommendation

The disciplinary board concurred in the hearing committee’s findings. It found his conduct was intentional and caused actual injury to his clients.
Like the committee, the board found no evidence in support of any mitigating factors. However, it recognized several aggravating factors, including prior disciplinary offenses, dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary process by intentionally failing to comply with the rules or orders of the disciplinary agency, refusal to acknowledge the wrongful nature of the misconduct, vulnerability of the victims, and indifference to | fimaking restitution. Citing Standards 4.11 and 4.41 of the ABA’s Standards for Imposing Lawyer Sanctions and jurisprudence from this court, the board recommended respondent be disbarred from the practice of law and ordered to pay restitution and/or return unearned fees to his clients.
Neither respondent nor the ODC filed an objection in this court to the recommendation of the disciplinary board.
DISCUSSION
The record supports the findings of the hearing committee that respondent violated the professional rules as charged. Therefore, the only issue to be addressed by the court is the appropriateness of the proposed sanction.
In making a determination of the appropriate sanction, we are mindful that the purpose of lawyer disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain appropriate standards of professional conduct to safeguard the public, to preserve the integrity of the legal profession, and to deter other lawyers from engaging in violations of the standards of the profession. Louisiana State Bar Ass’n v. Guidry, 571 So.2d 161 (La.1990). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent’s misconduct is clearly serious in nature. He deprived clients of their funds for significant periods of time, ne-glectéd legal matters entrusted to him, and failed to communicate with his clients. We are unable to identify any mitigating factors from the record. However, we recognize the existence of' numerous aggravating factors, including respondent’s prior *723 disciplinary history in this court and [7his substantial experience in the practice of law (admitted 1981). Under these circumstances, we must conclude respondent lacks the moral fitness to practice law in the State of Louisiana. Accordingly, we will accept the disciplinary board’s recommendation and disbar respondent.
DECREE
Upon review of the findings and recommendation of the disciplinary board, and considering the record filed herein, it is ordered that the name of Jeffrey P. Le-Blanc be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Respondent is ordered to make full restitution to his victims. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

 Philip C. Ciaccio, Justice Pro Tempore, sitting for Associate Justice Harry T. Lemmon.

. In In re: LeBlanc, 98-0800 (La.5/29/98), 713 So.2d 449, this court suspended respondent for a period of three years for failing to represent a client with competence and promptness, failing to communicate with his client, failing to comply with reasonable requests for information, and engaging in conduct involving fraud and misrepresentation.

. In addition to the three-year suspension imposed by this court in In re: LeBlanc, 98-0800 (La.5/29/98), 713 So.2d 449, respondent was also suspended for one year in In re: LeBlanc, 97-1056 (La.9/19/97), 699 So.2d 378, for failing to act with diligence, misleading his client regarding his misconduct, and failing to cooperate with the ODC.