hPER CURIAM.
This attorney disciplinary proceeding arises from two sets of formal charges involving eight counts of misconduct filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Akilah Ma-wusi Ali (formerly known as Connie Welcome-Sadler), an attorney licensed to practice law in Louisiana, but currently suspended from practice.
PRIOR DISCIPLINARY HISTORY
Before addressing respondent’s current charges, we find it helpful to review her prior disciplinary history. In addition to being admonished on two occasions by the disciplinary board,[1] respondent has been *1016 disciplined by both this court and the federal courts.
On April 4, 1997, respondent was suspended by this court for a period of one year, with nine months deferred, followed by a two year period of supervised probation. The sanction stemmed from several instances of failing to refund unearned fees and two instances of commingling and conversion of client funds. In re: Welcome-Sadler, 97-0143 (La.4/4/97), 691 So.2d 676 (hereinafter referred to as Ali I).
| ¡.Upon the expiration of the active period of respondent’s suspension in Ali I, respondent was reinstated to practice and placed on probation on August 27, 1997. Subsequently, the ODC received information that respondent was not in compliance with the terms of her probation, and moved for this court to revoke her probation.[2] We revoked her probation and made the two year deferred portion of her suspension executory. In re: Ali, 99-0659 (La.3/31/99), 733 So.2d 1183 (hereinafter referred to as Ali II).
On May 9,1997, one month after respondent was first suspended by this court in Ali I, she was disbarred from practice before the United States District Court for the Western District of Louisiana based on this court’s imposition of discipline.[3]
UNDERLYING FACTS

No. 00-DB-008

UMudd Matter

In late 1996, respondent settled a personal injury matter on behalf of her client, Henry Mudd. Upon receipt of two settlement checks totaling $10,000, respondent deposited the funds into her operating account. Later, respondent issued checks from her operating account to Mr. Mudd and his third party medical providers for their share of the proceeds. During the *1017 period in question, respondent failed to maintain a client trust account. ■

Journet Matter

In early 1997, respondent settled a personal injury case on behalf of her client, John Journet. Respondent received two settlement checks totaling $4,448.97 and deposited the funds into her operating account. While respondent issued a check from her operating account to Mr. Journet in the amount $691.98, she neglected to provide an accounting. Moreover, respondent failed to maintain a client trust account during the period in question.

Phillips Matter

In June, 1996, Ora Lee Phillips retained respondent and another attorney to represent Ms. Phillips’ daughter in connection with a civil suit pending in the United States District Court for the Western District of Louisiana. Ms. Phillips gave checks totaling $3,500 as advance payment for costs and expenses. Respondent deposited the funds into her client trust account, but converted the funds to her personal use.
During the representation, respondent was disbarred from the practice of law by the United States District Court for the Western District of Louisiana and was therefore was prohibited from completing the legal matter for her client. While Ms. Phillips made numerous requests for a refund of the unearned fee, respondent has only made partial payment in the amount of $1,000. Respondent’s co-counsel concluded the legal matter at her own expense.

\Jsfardsse Matter

In June, 1995, Bobby Narcisse retained respondent on a contingency fee basis to represent him in connection with a discrimination matter. Mr. Narcisse paid respondent $5,000 as an advance for legal costs and expenses. Respondent filed suit in the United States District Court for the Western District of Louisiana, as well as took other legal measures on behalf of her client. After respondent was disbarred from the practice of law by the federal district court, she was prohibited from completing the legal matter. While respondent provided an untimely accounting showing she owed Mr. Narcisse $911.25, she failed to return the amount to her client.

No. OO-DB-122

Helaire Matter

In May, 1998, Margo Helaire retained respondent for $3,500 to conduct research and file an appeal in a state civil proceeding. However, respondent neglected to communicate with her client regarding the case. Ultimately, one year after she was retained, respondent advised Ms. Helaire that she had been suspended from the practice of law for a period of nine months when her probationary status was revoked by this court. While respondent returned her client’s original file, she failed to provide an accounting or return the unearned fee.
Ms. Helaire filed a complaint, which the ODC forwarded to respondent. When respondent neglected to reply to the ODC’s requests for information regarding the complaint, she was subpoenaed to appear for a scheduled deposition. At the deposition, respondent testified she had done a great amount of legal research in Ms. He-laire’s case. However, she admitted she was unable to produce support for her claims, alleging she was no longer in possession of her client files. Respondent | «¡testified the contents of the storage unit, which included her client files, were auctioned in December, 1999 for non-payment of rent.

Byers Matter

In February, 1999, Dreffus Byers, Jr. retained respondent for $500 to handle *1018 numerous legal matters on his behalf. Two months later, respondent was suspended from the practice of law for a period of nine months when her probationary status was revoked by this court. She neglected to notify Mr. Byers of her suspension, nor did she provide an accounting, or return Mr. Byers’ original documents and the unearned fee.
Mr. Byers filed a complaint with the ODC. In a sworn statement taken in connection with the ODC’s investigation, respondent alleged she initially took efforts to communicate with her client, but to no avail.

Broussard Matter

In May, 1998, Sherry T. Broussard retained respondent for $2,825 to handle two employment matters. Subsequently, Ms. Broussard made numerous attempts to contact respondent, but to no avail. While respondent took legal action on behalf of her client, she neglected to complete the matters because she was suspended from the practice of law for a period of nine months when her probationary status was revoked by this court. Thereafter, respondent failed to provide an accounting or return the unearned fee.
Ms. Broussard filed a complaint with the ODC, asserting she was harmed respondent’s misconduct because she was unemployed and her husband was suffering from cancer. In a statement taken in connection with the ODC’s investigation, respondent testified, prior to her suspension from practice, she had reached a partial settlement in one of the legal matters and that the defendant had placed the settlement | ¿funds in an interest bearing accounting pending resolution of the remaining matters. Ms. Broussard did not dispute respondent’s assertions.

Robinson Matter

In January, 1998, Jackie Ray Robinson, Jr. retained respondent for $7,500 to represent him in a federal discrimination case. Unbeknownst to respondent, at the time she accepted the case, she had been disbarred from engaging in the practice of law in the United States District Court for the Western District of Louisiana, the federal district where Mr. Robinson’s case was pending. Upon learning of her ineligibility, respondent associated other counsel to assist in the matter. However, the attorney withdrew because he was unable to obtain information from or communicate with respondent. Mr. Robinson, who was unaware of respondent’s ineligibility to practice, continued to write to respondent from July, 1998 to September, 1999 seeking information on the status of his case and reasons for her failure to enroll as counsel. Respondent failed to respond to the correspondence.
Mr. Robinson filed a complaint with the ODC, which the ODC forwarded to respondent. When respondent neglected to reply, a subpoena was issued for her appearance at a scheduled deposition. At the deposition, respondent testified she had been unaware she was disbarred from practice in the federal court, allegedly because she did not receive notice.

Robertson Matter

In December, 1996, Pearl Robertson retained respondent for $5,000 to institute a civil rights suit in the United States District Court for the Western District of Louisiana against the City of Jeanerette. Upon learning she was barred from engaging in the practice of law in the federal judicial district where the case was pending, respondent gave the case to Joshua Frank, a Lafayette attorney, for completion without her client’s knowledge or consent. After Mr. Frank settled the case for |7$3,000, Ms. Robertson notified the defendant he was not authorized to act as her attorney. Although respondent promised to return the entire $5,000 fee by a certain date, she neglected to do so.
*1019 Ms. Robertson filed a complaint, which the ODC forwarded to respondent. When respondent failed to reply to the ODC’s requests for information regarding the complaint, the ODC issued a subpoena compelling her appearance at a scheduled deposition. At the deposition, respondent testified that her client was advised she gave the case to Mr. Frank, although respondent did not have anything in writing to support this assertion. Moreover, respondent was unable to recall whether she had ever advised Ms. Robertson that she was barred from practicing law in the federal judicial district.
DISCIPLINARY PROCEEDINGS

Fannal Charges

The ODC filed three counts of formal charges in case no. 00-DB-008 alleging respondent’s actions violated Rules 1.5(f) (failure to account for fees, failure to refund unearned fees and failure to place disputed fees in trust), 1.15 (commingling and conversion of client funds and failure to maintain an IOLTA client trust account and accurate financial records), 1.16(d) (failure to protect client interests upon termination of representation), 8.4(a) (violating or attempting to violate the Rules of Professional Conduct), 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation) and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct. Respondent filed an answer to the formal charges essentially denying any intentional misconduct on her part. A formal hearing was conducted and respondent failed to appear.
| sSeveral months later, the ODC filed a second set of formal charges, consisting of six counts of misconduct, against respondent in case no. OO-DB-122. The charges allege violations of Rules 1.3 (incompetence), 1.4 (failure to communicate), 1.5(f) (failure to account for fees, failure to refund unearned fees and failure to place disputed fees in trust), 1.16(d) (failure to protect client interests upon termination of representation), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a) (violating or attempting to violate the Rules of Professional Conduct), 8.4(d) (engaging in conduct prejudicial to the administration of justice) and 8.4(g) (failure to cooperate with the ODC) of the Rules of Professional Conduct. Respondent failed to respond to the formal charges, and the charges were admitted pursuant to Supreme Court Rule XIX, § 11(E)(3). Subsequently, the hearing committee gave the parties the opportunity to file written arguments and documentary evidence on the issue of sanctions. While the respondent failed to present anything for consideration, the ODC submitted evidence in support of its case.

Recommendation of the Hearing Committee

Upon consolidating the two sets of formal charges at the request of the ODC, the committee issued one written recommendation. As to the Mudd and Journet matters, the committee determined there was no evidence of a violation of Rule 1.5(f) (failure to account for fees, failure to refund unearned fees and failure to place disputed fees in trust) because the clients did not pay advance fees to respondent. Moreover, the committee determined there was no evidence to support a finding that respondent’s actions violated Rules 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation) and 8.4(d) (engaging in conduct prejudicial to the administration of justice) for failing to maintain a client trust account. However, relying on respondent’s own admissions and the testimony of respondent’s 1qformer probation monitor, the committee determined the ODC proved by clear and convincing evidence violations of Rules 1.15 (commingling and conversion of client funds and failure to maintain an IOLTA *1020 client trust account and accurate financial records) and 8.4(a) (violating or attempting to violate the Rules of Professional Conduct).
As to the Phillips matter, the committee found respondent violated Rules 1.5(f) (failure to account for fees, failure to refund unearned fees and failure to place disputed fees in trust), 1.15(a) (commingling and conversion of client funds), 8.4(a) (violating or attempting to violate the Rules of Professional Conduct), 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation) and 8.4(d) (engaging in conduct prejudicial to the administration of justice). Regarding the Narcisse matter, the committee determined respondent violated the same professional rules, with the exception of violations of Rules 1.15(a) (commingling and conversion of client funds) and 8.4(d) (engaging in conduct prejudicial to the administration of justice). In addition, it found respondent also violated 1.16(d) (failure to protect client interests upon termination of representation).
As to the five matters subject of proceeding no. OO-DB-122, the hearing committee determined there was clear and convincing evidence to support the charged professional violations, namely, Rules 1.3 (incompetence), 1.4 (failure to communicate), 1.5 (failure to account for fees, failure to refund unearned fees and failure to place disputed fees in trust), 1.15 (commingling and conversion of client funds), 1.16 (failure to protect client interests upon termination of representation), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a) (violating or attempting to violate the Rules of Professional Conduct), 8.4(d) (engaging in conduct prejudicial to the administration of justice) and 8.4(g) (failure to cooperate with the ODC) of the Rules of Professional Conduct.
|inThe hearing committee found respondent intentionally violated duties owed to her clients and the profession, resulting in actual injury. It recognized her commingling and conversion deprived her clients of funds rightfully due them. Moreover, it noted respondent’s neglect of legal matters, failure to communicate and failure to account for funds needlessly delayed the resolution of her clients’ legal matters. Finally, the committee acknowledged the legal profession has been harmed by respondent’s failure to cooperate in the disciplinary investigation by causing unjust delays and imposing an additional burden on the disciplinary system.
In addressing the issue of sanctions, the committee recognized as aggravating factors respondent’s prior disciplinary offenses, pattern of misconduct, multiple offenses, dishonest or selfish motive, refusal to acknowledge the wrongful nature of her misconduct, bad faith obstruction of the disciplinary process by intentionally failing to comply with rules or orders of the disciplinary agency, substantial experience in the practice of law[4] and indifference to making restitution. The board did not cite any factors in mitigation. Relying on the ABA’s Standards for Imposing Lawyer Sanctions[5] and jurisprudence from this *1021 court,[6] the committee recommended respondent be disbarred from the practice of law.
| ^Recommendation of the Disciplinary Board
The disciplinary board adopted the factual findings of the hearing committee in all respects, except as insofar as the board determined there was no evidence respondent violated Rule 1.3 (incompetence) relative to the Broussard matter. In doing so, the board recognized the record indicated respondent worked on Ms. Broussard’s suit until she was suspended from the practice of law. Moreover, the board determined respondent did not violate Rule 8.4(d) (engaging in conduct prejudicial to the administration of justice) as to the Robertson matter since she returned her client’s file, which permitted Ms. Robertson to seek other counsel.
The board committee found respondent knowingly and intentionally violated duties owed to her clients and the profession. As evidence, it noted her clients continue to be deprived of their money. The cases of Ms. Broussard and Ms. Robertson have been substantially delayed, and Mr. Robinson’s case appears to have prescribed. The board contended the legal profession has been harmed by respondent’s victimization of multiple clients by jeopardizing their cases and converting their money.
The board relied on the ABA’s Standards and aggravating factors cited by the committee, as well recognized in aggravation respondent’s refusal to acknowledge the wrongful nature of her misconduct, bad faith obstruction of the disciplinary process by intentionally failing to comply with rules or orders of the disciplinary agency and indifference to making restitution. The board also relied on jurisprudence from this court.
Based on its conclusions, the board proposed respondent be disbarred from the practice of law, as well as ordered to pay full restitution to her victims.
Neither respondent nor the ODC filed an objection in this court to the recommendation of the disciplinary board.
| ^DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343, 348; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444, 445 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
The record supports the conclusion that respondent engaged in a pattern of serious misconduct. Respondent failed to commu *1022 nicate with her clients regarding the status of their cases and failed to notify them of her inability to practice law based on disciplinary sanctions. Additionally, respondent failed to account for or return unearned fees, failed to maintain a client trust account or accurate financial records and failed to protect her clients’ interests at the termination of the representation, as well as failed to cooperate with the ODC in these proceedings. Finally, respondent commingled and converted a substantial amount of client funds.
Having found evidence of professional misconduct, the sole issue presented for our consideration is the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and 113mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent’s conversion of client funds caused actual harm to her clients by depriving them of their funds for a significant period of time. We have often held such conduct warrants disbarment. See In re: Collinsworth, 01-1628 (La.9/21/01), 795 So.2d 312; In re: Poirrier, 01-1116, 01-1118 (La.6/29/01), 791 So.2d 94; In re: LeBlanc, 01-0099 (La.4/27/01), 786 So.2d 719; In re: Callahan, 00-3357 (La.3/23/01), 782 So.2d 624; In re: Cohen, 00-1476 (La.9/15/00), 769 So.2d 531; In re: Wratts, 99-2071 (La.9/24/99), 744 So.2d 1278; In re: Patrick, 99-0771 (La.7/2/99), 738 So.2d 539. In addition to her conversion of client funds, respondent substantially jeopardized and or delayed her clients’ cases, causing them actual harm.
The baseline sanction for respondent’s misconduct is clearly disbarment. Several aggravating factors are present, including a pattern of misconduct, multiple offenses and substantial experience in the practice of law. Respondent’s prior disciplinary record is indicative of her chronic disregard for her professional responsibilities owed to her clients and profession. Respondent expresses no remorse for her actions in depriving her vulnerable clients of their funds for several years or jeopardizing their legal matters, nor has she made a genuine attempt at restitution.
Under these facts, we must find respondent’s actions convincingly demonstrate that she lacks the moral fitness to engage in the practice of law, and is a threat to her clients, the public and the profession. Accordingly, we will accept the board’s recommendation and disbar respondent from the practice of law.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that the name of [uAkiIah Mawusi Ali (formerly known as Connie Weleome-Sadler) be stricken from the roll of attorneys and that her license to practice law in the State of Louisiana be revoked. Respondent is ordered to make full restitution to her victims. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. These admonitions, imposed in 1991 and 1992, were based on respondent's failure to cooperate in disciplinary investigations.

. In November, 1997, Robert Broussard, respondent’s probation monitor, wrote to the ODC maintaining “it appears that Ms. Ali is going to be quite lax about complying with the requirements of the [probation] plan.” In addition to her not notifying him of her reinstatement as she promised, respondent neglected for several months to retain an accountant as ordered by the court. Subsequently, Mr. Broussard periodically reviewed some of respondent's cases and reported to the ODC several areas of concern. Although he had advised respondent to set up an effective prescription tickler system, she failed to do so despite repeated requests. Thus, some of her files had no prescription dates diaried in the file or on the central office calendar. In addition, he noted respondent did not have a client ledger accounting system or trust accounting system. He also alleged that respondent improperly handled retainers. Many of the fees were unaccounted for in the files or not deposited in the client trust account. It was certain that two retainers were deposited in respondent's general operating fund. Since it was respondent's belief that all retainers become the ownership of the attorney upon receipt, rather than when earned, Mr. Broussard requested that respondent contact the ODC for information regarding the proper handling of retainers. Respondent failed to comply. Her non-compliance with the terms of her probation attributed to the misconduct subject of the instant proceedings.

. While not pertinent to these proceedings, respondent was also disbarred from legal practice in the United States District Court for the Eastern District of Louisiana stemming from this court's imposition of discipline, as well as her failure to maintain her mandatory attorney registration information with the federal court. In the Matter of Welcome-Sadler, 691 So.2d 676 (La.1997). Additionally, the United States District Court for the Middle District of Louisiana suspended respondent from the practice of law in its jurisdiction for a period of thirty days. In re: Welcome-Sadler, 691 So.2d 676 (La.1997). Although she had been eligible for earlier reinstatement, she remained suspended in the district for one year, until May 18, 1998.

. Respondent was admitted to the practice of law in 1980, approximately sixteen years pri- or to the first misconduct subject of these proceedings.

. Standard 4.11 provides disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client; Standard 4.41 provides disbarment is generally appropriate when a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; 4.61 provides disbarment is generally appropriate when a lawyer knowingly deceives a client with the intent to benefit the lawyer or another, and causes serious or potentially serious injury to a client; and Standard 7.1 provides disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a *1021 violation of a duty owed as a professional with the intent to obtain benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system.

. In re: Smith, 98-0619 (La.5/8/98), 710 So.2d 241 (attorney with prior disciplinary record disbarred for seven counts of misconduct involving commingling and conversion of client funds, failing to communicate, incompetence and failing to cooperate); In re: Gilbert, 99-2566 (La. 11/19/99), 748 So.2d 427 (attorney disbarred for numerous counts of neglect of client matters, failure to account for client funds, lying to clients regarding status of their legal matters and failing to cooperate).