978 So.2d 904 (2008)
In re Kerwin W. DOYLE.
No. 2007-B-2015.
Supreme Court of Louisiana.
April 4, 2008.

*905 ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Kerwin W. Doyle, an attorney licensed to practice law in Louisiana.

UNDERLYING FACTS AND PROCEDURAL HISTORY
By way of background, respondent has a long history of alcohol and drug abuse, which prompted this court to transfer him to disability inactive status on July 23, 1993. In re: K.W.D., 620 So.2d 1329 (La. 1993). At that time, the ODC's investigation of the numerous complaints it had received against respondent was stayed. Thereafter, respondent entered substance abuse treatment and achieved sobriety. On December 8, 2000, as the result of a joint petition by respondent and the ODC, respondent was transferred from disability inactive status to interim suspension. In re: Doyle, 00-3022 (La.12/8/00), 774 So.2d 117. This action allowed the disciplinary proceeding against respondent to resume.

FORMAL CHARGES

Count I
In the early 1990's, respondent settled personal injury cases on behalf of several clients who had been treated by Dr. Michael Taylor of North Market *906 Chiropractic Clinic. In each instance, respondent withheld funds from the settlement to pay his client's medical expenses; however, respondent failed to promptly remit the funds to Dr. Taylor.[1] Respondent also failed to cooperate with the ODC in its investigation of the complaints filed by Dr. Taylor.

Count II
In early 1991, Vicia McKinney retained respondent to represent her in a personal injury matter. Respondent filed suit on behalf of his client in July 1991. Thereafter, without Ms. McKinney's knowledge or consent, respondent settled the claim with the Louisiana Insurance Guaranty Association (LIGA) for $10,000, minus a $100 deductible. On December 2, 1992, LIGA issued its check in the amount of $9,900 and forwarded the check to respondent with the settlement documents. Respondent forged Ms. McKinney's endorsement on the settlement check and retained the proceeds for his own use. He also failed to return the settlement documents to LIGA, which in 1995 filed a motion to enforce the settlement against Ms. McKinney.
In January 1997, Ms. McKinney filed a complaint against respondent with the ODC. She also made a claim for restitution from the Louisiana State Bar Association's Client Assistance Fund.[2]

Count III
In 1991, respondent was retained to represent Joyce Walker and her guest passengers in a personal injury matter arising out of an automobile accident. In 1992, State Farm Fire and Casualty Company issued checks to respondent on behalf of his clients totaling $10,774.90. Respondent did not disburse these funds to his clients or on their behalf. Respondent also failed to communicate with his clients concerning the status of the lawsuits he filed on their behalf, and he failed to take any action to move those matters forward.

Count IV
In 1991, respondent settled a personal injury claim on behalf of his client, Byron Palmer, and withheld $690 to pay the expenses of Mr. Palmer's treatment at the Ebrahim Clinic. Respondent failed to promptly remit the funds to the clinic, and beginning in October 1991, the clinic added $6.90 each month to Mr. Palmer's unpaid balance. In August 1994, the past due account was assigned to a collection agency with a balance of $765.90.

Count V
In 1993, respondent received a $7,500 settlement check for the benefit of his client, James Snowden. Respondent failed to disburse $3,500 to which Mr. Snowden was entitled as his portion of the settlement proceeds. Respondent also failed to return his client's telephone calls requesting an explanation for the delay in the disbursement.

Count VI
In July 1990, Vivian Hayes retained respondent to handle a personal injury matter. On several occasions thereafter, respondent falsely assured Ms. Hayes that a settlement check was forthcoming. In early 1993, respondent requested that Ms. Hayes execute a power of attorney in his favor so that he could complete the settlement of her claim. Ms. Hayes declined to do so, and she heard nothing further from respondent.

*907 Count VII

In 1993, respondent settled personal injury claims on behalf of his clients, Stephanie Jackson and Margaret Williams, who had been treated by Dr. James Burns of Jewella Chiropractic Clinic. In each instance, respondent withheld funds from the settlement to pay his client's medical expenses, totaling $2,210 for Ms. Jackson and $1,870 for Ms. Williams; however, respondent failed to promptly remit these funds to Dr. Burns. Respondent subsequently mailed two checks to Dr. Burns in payment of the Jackson and Williams accounts. Both checks were returned for insufficient funds. After Dr. Burns advised respondent of his intent to turn over the worthless checks to the district attorney, respondent replaced the checks with bank cashier's checks.

Count VIII
In 1989, Minnie Guiton retained respondent to represent her in a personal injury matter arising out of a slip and fall accident and in a claim for property damages arising out of an automobile accident. Respondent settled the personal injury claim and withheld $3,000 to pay Ms. Guiton's medical expenses; however, he failed to promptly remit the funds to the medical provider and did not disburse any portion of the settlement proceeds to Ms. Guiton. Furthermore, respondent did not complete the representation relating to Ms. Guiton's property damage claim.

Count IX
In 1990, Carl Staples retained respondent to represent him in a personal injury matter arising out of an automobile accident. Respondent settled the personal injury claim in 1991 for $22,000, from which he withheld approximately $7,000 to pay Mr. Staples' medical expenses; however, respondent failed to promptly remit the funds to the medical provider. Mr. Staples also requested that respondent pursue an uninsured motorist claim against LIGA arising out of the accident. Respondent undertook some efforts in this regard, but he did not complete the resolution of this claim and did not respond to Mr. Staples' requests for information concerning the status of the matter.

Count X
In 1992, Samuel Morris retained respondent to represent him in two separate legal matters. Mr. Morris paid respondent $150.96 toward a $310 fee to handle both matters. Respondent did not complete either representation, and he did not respond to Mr. Morris' requests for information concerning his cases.

Count XI
In 1991, Clinton and Cynthia Hudson retained respondent to represent them in an adoption matter. In April 1992, Mr. and Mrs. Hudson paid respondent's full fee of $300. In October 1992, respondent prepared and filed a formal act of surrender for adoption, but it was subsequently determined that the document was not in compliance with Louisiana law. Respondent took no further action towards completion of the adoption, and he did not respond to his clients' requests for information concerning the matter. By letter dated February 2, 1993, Mr. and Mrs. Hudson terminated respondent's representation and requested that he refund the $300 fee they paid. Respondent failed to comply with this request.

Count XII
Ms. Maurice Locke retained respondent to represent her in a personal injury matter. Respondent filed suit on behalf of his client in the 26th Judicial District Court for the Parish of Bossier. Thereafter, without Ms. Locke's knowledge or consent, respondent settled the claim for $7,204.50. Respondent forged Ms. Locke's endorsement on the settlement check and retained *908 the proceeds for his own use. He also failed to return the settlement documents to the defendant insurer, which subsequently filed a motion to enforce the settlement against Ms. Locke. In 1996, respondent paid the insurer $3,000 as full compromise of its action for recovery of the settlement proceeds.

DISCIPLINARY PROCEEDINGS
In January 2007, the ODC filed twelve counts of formal charges against respondent, alleging that his conduct as set forth above violated the following provisions of the Rules of Professional Conduct, as those rules were in effect on January 1, 1991 and September 1, 1992: Rules 1.1(a) (failure to provide competent representation to a client), 1.2(a) (scope of the representation), 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.15 (safekeeping property of clients or third persons), 1.16(d) (obligations upon termination of the representation), 3.2 (failure to expedite litigation), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(b) (commission of a criminal act reflecting adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 8.4(d) (engaging in conduct prejudicial to the administration of justice), and 8.4(g) (failure to cooperate with the ODC in its investigation).
Respondent answered the formal charges and largely admitted the factual allegations and rule violations set forth therein. He also pointed out that the misconduct occurred "while he was in the throes of substance abuse from 1990 until 1993," and that thereafter he entered a treatment facility, entered into a contract with the Lawyers Assistance Program (LAP), and was able to achieve sobriety.

Hearing Committee Report
This matter proceeded to a hearing in mitigation. Following the hearing, the hearing committee issued its report, finding that respondent was a very credible witness on his own behalf. He candidly admitted the charged violations, which he believes would not have occurred in the absence of his addiction to alcohol and drugs, including cocaine and marijuana. The committee found that respondent's long-term residential substance abuse treatment was successful and that he has been free from alcohol and drugs since 1993. Respondent has made, and is still making, efforts to pay restitution to his former clients. The committee concluded that respondent "has become a sober, clean and contributing member of society, bearing little, if any, resemblance to the lawyer driven from practice by alcohol and drugs in 1993."
The committee acknowledged respondent's admission that he violated the Rules of Professional Conduct as charged in the formal charges. The committee determined that respondent violated duties owed to clients, the public, the legal system, and the profession, and that his actions were both negligent and intentional. The committee found that the actual injury caused by respondent's misconduct was substantial. Under the ABA's Standards for Imposing Lawyer Sanctions, the applicable baseline sanction is disbarment.
In aggravation, the committee recognized the following factors: a pattern of misconduct, multiple offenses, and substantial experience in the practice of law (admitted 1981). However, the committee found there is "a considerably heavier weight of mitigating factors," including the following: absence of a prior disciplinary record, personal or emotional problems, *909 good faith efforts to make restitution or to rectify the consequences of the misconduct, full and free disclosure to the ODC in recent years and a cooperative attitude toward the disciplinary proceeding, good character and reputation, physical or mental disability or impairment, delay in the disciplinary proceeding, interim rehabilitation, and remorse.
Considering all the circumstances, and relying upon this court's prior jurisprudence, the committee recommended that respondent be suspended from the practice of law for one year, retroactive to the date of his interim suspension, followed by a one-year period of probation with conditions.
The ODC filed an objection to the leniency of the sanction recommended by the hearing committee.

Disciplinary Board Recommendation
Noting that respondent has admitted the material factual allegations of the formal charges, the disciplinary board found that the hearing committee's findings of fact are not manifestly erroneous and adopted same. Likewise, the board found respondent violated the Rules of Professional Conduct as alleged in the formal charges. Based upon respondent's admissions and the evidence in the record, the board determined that respondent knowingly and intentionally violated duties owed to his clients and as a professional. He caused harm to clients and third-party medical providers by failing to turn over funds he withheld from settlements to pay the providers. At least twenty-one clients were affected by respondent's misconduct, including clients who erroneously believed that their medical bills had been paid. The applicable baseline sanction in this matter is disbarment.
The board found that the record supports the following aggravating factors: dishonest or selfish motive, a pattern of misconduct, multiple offenses, vulnerability of the victims, and substantial experience in the practice of law (admitted 1981). The board determined that the mitigating factors present are absence of a prior disciplinary record, personal or emotional problems, timely good faith effort to make restitution, cooperative attitude toward the disciplinary proceeding, good character and reputation, chemical dependency,[3] and remorse.
Turning to the issue of an appropriate sanction for respondent's misconduct, the board considered two prior cases decided by this court which involved similar issues. In In re: Callahan, 00-3357 (La.3/23/01), 782 So.2d 624, the respondent had no prior disciplinary record and was considered an experienced attorney. He failed to distribute settlement funds to clients and third-party providers, harming over a dozen victims in the process. Callahan also neglected cases and refused to withdraw from the representation of some clients. He was disbarred.
In In re: LaHatte, 03-0437 (La.6/27/03), 851 So.2d 1024, the respondent commingled and converted funds owed to a third-party provider from thirteen personal injury cases. When LaHatte attempted to pay the provider, the check was returned for insufficient funds. In two other matters, LaHatte failed to turn over funds to the third-party providers. Three years after one of the cases settled, LaHatte wrote a letter to the provider advising that the client's case was still pending. Altogether, *910 LaHatte commingled and converted about $20,000 and violated numerous provisions of the Rules of Professional Conduct. Aggravating factors recognized were a pattern of misconduct, multiple offenses, and substantial experience in the practice of law. In mitigation, the court noted that LaHatte suffered from alcoholism. He also had no prior disciplinary record, was remorseful, and had paid restitution. Finding that the fact of LaHatte's alcoholism did not eliminate his culpability for his misconduct, but was rather a mitigating factor, this court suspended LaHatte for two years, with all but six months deferred, subject to probation.
The board concluded:
Like LaHatte, the instant matter lacks a definitive causal connection between Respondent's chemical dependency and his misconduct. Nonetheless, the fact of the addiction may be taken into mitigation. In LaHatte, all converted money was repaid prior to formal charges but, in the instant matter, Respondent is still attempting to find clients to make restitution. Although Respondent's cumulative misconduct is more in line with Callahan, Callahan lacked the mitigating factors of chemical dependency, character or reputation, remorse and restitution.
Although the baseline sanction is disbarment, the Board recognizes Respondent's battle with chemical dependency and his efforts to rebuild his life. Respondent has various letters of recommendation in the record from former employers, a minister, and others who all attest to his extraordinary efforts to turn his life around and of the benefits that he can give back to society. These efforts along with the damaging effects of chemical dependency support a downward departure to a three year suspension.
Based on this reasoning, a majority of the board recommended that respondent be suspended from the practice of law for three years, retroactive to the date of his interim suspension. The board also recommended that respondent continue his efforts at restitution, repay the Client Assistance Fund, and enter into a five-year recovery agreement with LAP. Finally, the board recommended that respondent be assessed with all costs of these proceedings.[4]
Neither respondent nor the ODC filed an objection to the disciplinary board's recommendation.

DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343, 348; Louisiana State Bar Ass'n v. Boutall, 597 So.2d 444, 445 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. See In re: Caulfield, 96-1401 (La. 11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
Respondent has admitted the material factual allegations of the formal charges, and based upon that admission, as well as the other evidence in the record, we find there is clear and convincing evidence of his violation of the Rules of Professional *911 Conduct. Respondent converted client and third-party funds, settled cases without the approval of his clients, failed to communicate with clients, and neglected their legal matters. This conduct falls far below the high ethical standard expected of attorneys licensed to practice law in this state.
Having found professional misconduct, we now turn to a discussion of an appropriate sanction. In considering that issue, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass'n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington, 459 So.2d 520 (La.1984).
Respondent knowingly and intentionally violated duties owed to his clients and as a professional, causing actual harm. The baseline sanction for respondent's misconduct is undoubtedly disbarment according to the ABA's Standards for Imposing Lawyer Sanctions and our prior decisions. However, we agree with the hearing committee and the disciplinary board that the mitigating factors present warrant a downward deviation to a three-year suspension.
The record indicates that in 1993, respondent realized he was suffering from a grave disability in the form of an addiction to drugs and alcohol. Respondent requested that this court transfer him to disability inactive status and he thereafter admitted himself to a long-term substance abuse treatment facility. Since being admitted to treatment, respondent has achieved and maintained sobriety. He has demonstrated a cooperative attitude during these proceedings and is remorseful for the harm caused by his addiction. Respondent also has an excellent reputation in the legal community and in the community at large, as evidenced by the compelling character testimony offered on his behalf before the hearing committee.
Taken together, these mitigating circumstances clearly warrant a downward deviation from the baseline sanction. Accordingly, we conclude the appropriate sanction for respondent's misconduct in this case is a three-year suspension from the practice of law.

DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Kerwin Wayne Doyle, Louisiana Bar Roll number 5062, be and he hereby is suspended from the practice of law for a period of three years, retroactive to his December 8, 2000 interim suspension. It is further ordered that respondent shall make restitution to his victims and repay the Louisiana State Bar Association's Client Assistance Fund any amounts paid to claimants on his behalf. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.
NOTES
[1] In 2007, Dr. Taylor sent a letter to the ODC in which he indicated that he had forgiven any debt owed to him by respondent in connection with these matters.
[2] In December 2000, the Client Assistance Fund paid $2,222 to Ms. McKinney.
[3] The board noted there was no medical testimony presented to prove (or disprove) a causal connection between respondent's substance abuse and his misconduct; however, the committee accepted respondent's belief that his chemical dependency was the cause in fact of the misconduct.
[4] One board member dissented and would recommend disbarment.