*865 |, ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.*
This disciplinary matter arises from three sets of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Bernard J. Williams, an attorney licensed to practice law in Louisiana, but currently ineligible to practice.[1]
UNDERLYING FACTS

09-DB-05Í

Count I — The Adams Matter
In November 2005, Cedric Adams hired respondent to defend him in a criminal matter. In order to pay respondent’s fee, Mr. Adams, who was incarcerated at the time, instructed his sister to give his income tax refund check to respondent. Thereafter, respondent was to deliver the check to Mr. Adams for endorsement, cash the cheek, and collect his fee. Contrary to Mr. Adams’s instructions, respondent negotiated the check, collected his $8,000 fee, and sent the remaining balance to Mr. Adams’s sister. When Mr. Adams’s sister contacted the jail to inform her brother that the fee had been paid, she learned the criminal charges had been dropped. After being advised of the dismissal, respondent agreed to refund the fee. However, ^respondent failed to return the fee, and eventually stopped answering and/or returning phone calls from Mr. Adams’s sister.
In June 2006, Mr. Adams filed a disciplinary complaint against respondent. The complaint was forwarded to respondent’s primary address in August 2006 and returned to the ODC marked “unclaimed.” Although the ODC made several more attempts to reach respondent, he did not respond to the complaint until February 2009. In his response, respondent admitted that he failed to return the unearned fee, despite Mr. Adams’s request for a refund.[2]
The ODC alleged respondent’s conduct violated Rules 1.15(d) (failure to promptly deliver funds owed to a client or third person), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a) (violation of the Rules of Professional Conduct), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct.
Count II — The Schween Matter
In May 2006, Lyle Schween hired respondent to represent him in a flood loss claim against Allstate Insurance Company, paying him $1,500. Thereafter, respondent failed to produce documents regarding the claim, despite requests by Mr. Schween. Mr. Schween was also unsuccessful in his numerous attempts to contact respondent.
In September 2006, Mr. Schween filed a disciplinary complaint against respondent. The complaint was forwarded to respondent’s primary address, but he failed to answer the complaint. After several more attempts by the ODC to reach respondent, he finally responded to the complaint in February 2009. In his response, | ^respondent admitted that his work on Mr. Schween’s behalf was limited to mak *866 ing a phone call to Allstate. Respondent also agreed to refund the fee paid by Mr. Schween; however, he failed to do so.[3]
The ODC alleged respondent’s conduct violated Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.15(d), 8.4(a), and 8.4(c) of the Rules of Professional Conduct.
Count III — The Watson Matter
In July 2006, Marilyn Watson paid respondent $2,800 to represent her son in a criminal matter. Thereafter, Ms. Watson made numerous attempts to contact respondent, but with no success.
In September 2006, Ms. Watson filed a disciplinary complaint against respondent. The complaint was forwarded to respondent’s primary address and returned to the ODC marked “unclaimed.” Although the ODC made several more attempts to reach respondent, he did not respond to the complaint until February 2009. In his response, respondent admitted that he received $2,800 from Ms. Watson and failed to perform any work on behalf of her son. Respondent also stated that he was in the process of returning the unearned fees. However, according to Ms. Watson, she did not receive a refund.
The ODC alleged respondent’s conduct violated Rules 1.3, 1.4, 1.15(d), 8.1(c), 8.4(a), and 8.4(c) of the Rules of Professional Conduct.
| ¿Count TV — Respondent’s Criminal Conviction
Respondent was arrested in St. Tammany Parish in 2006 and charged with possession of cocaine and attempted possession of cocaine. In 2007, respondent pled guilty to the charges.
The ODC alleged respondent s conduct violated Rules 8.1(c), 8.4(a), and 8.4(b) (commission of a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer) of the Rules of Professional Conduct.

09-DB-057

The Ramos Matter
In February 2003, Olivia Barrios hired respondent to pursue a worker’s compensation claim. After the matter was concluded successfully in her favor, Ms. Barrios sought respondent’s assistance in obtaining her deceased husband’s retirement benefits. Respondent failed to perform any work in that matter, and as a result, Ms. Barrios terminated respondent’s services and requested her file. When Ms, Barrios met with respondent to retrieve the file, respondent asked her for a loan. Without advising her to seek independent counsel, respondent asked Ms. Barrios to invest in his law practice and offered to repay the loan with interest. In turn, Ms. Barrios, who was seventy-five years old at the time, gave respondent $15,000 by two separate checks. Respondent prepared two promissory notes for the respective amounts. Thereafter, respondent failed to repay the debt and failed to communicate with Ms. Barrios.
In August 2005, Ms. Barrios filed a disciplinary complaint against respondent. The ODC made several attempts to contact respondent, to no avail, necessitating the issuance of a subpoena. In May 2006, respondent appeared before the ODC and 15submitted to a sworn statement. By August 2006, respondent had repaid $3,900 to Ms. Barrios. In February 2009, respon *867 dent acknowledged the outstanding balance and advised the ODC that he intended to make full restitution to Ms. Barrios of all amounts due, with interest.[4]
The ODC alleged respondent’s conduct violated Rules 1.4, 1.8 (conflict of interest), 8.1(c), 8.4(a), 8.4(c), and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct.

09-DB-058

The Graham Matter

In February 2002, Kelley Graham hired respondent to represent her in a personal injury matter. The matter settled in May 2004 and checks were disbursed to respondent and Ms. Graham. However, Ms. Graham subsequently discovered that respondent had failed to pay approximately $2,000 in medical expenses to some of her medical providers. Thereafter, Ms. Graham made several attempts to contact respondent, but with no success.
In July 2004, upon receiving notice that her medical bills were being sent to a collection agency, Ms. Graham filed a disciplinary complaint against respondent. Respondent failed to reply to the complaint, necessitating the issuance of a subpoena. During his November 2004 sworn statement, respondent testified that Ms. Graham’s funds were being held in his operating account.[5] He also testified that his secretary had misappropriated client funds. Respondent explained that he endorsed blank |fichecks from his operating account, requiring his assistant to add the names of medical providers. Respondent assured the ODC that all of Ms. Graham’s medical providers would be paid immediately and that he would provide copies of the checks to the ODC as proof of payment. In February 2005, respondent provided the ODC with proof that he had paid the medical providers and sent Ms. Graham a written apology.
The ODC alleged respondent’s conduct violated Rules 1.3, 1.15(a) (safekeeping property of clients or third persons), 5.3(b) (responsibilities regarding nonlawyer assistants), 8.1(c), 8.4(a), and 8.4(c) of the Rules of Professional Conduct.
DISCIPLINARY PROCEEDINGS
In September 2009, the ODC filed the formal charges in 09-DB-054, 09-DB-057, and 09-DB-058. Respondent answered the formal charges, admitting some alleged misconduct and denying other alleged misconduct. In particular, respondent denied that he failed to cooperate with the ODC. Respondent explained that he had been absent from Louisiana since August 2006 to undergo drug rehabilitation treatment in New York, and he represented that he had notified the ODC of this fact. Following the filing of respondent’s answer, the three sets of formal charges were consolidated by order of the hearing committee chair.

Formal Hearing

The consolidated matters proceeded to a formal hearing on the merits conducted by the hearing committee in January 2010. The parties filed a joint stipulation of facts, which provides, in pertinent part:
*868 I. Respondent represented Kelley Graham in a personal injury matter.
|72. After reaching a settlement in the matter, checks made payable to Ms. Graham and respondent were disbursed.
3. Respondent failed to timely reimburse Ms. Graham’s medical providers.
5. Respondent settled a worker’s compensation claim for Olivia Barrios.
6. Respondent asked Ms. Barrios to extend him a loan for $15,000 to be recognized as an investment in his law firm.
7. Respondent failed to advise Ms. Barrios to seek independent counsel.
8. A total of $3,900 was repaid to Ms. Barrios prior to the filing of formal charges.
10.Respondent was retained by Cedric Adams and paid a $3,000 fee for representing him in a criminal matter.
II. Charges lodged against Mr. Adams were dropped prior to respondent taking any action regarding the matter.
12. Respondent received Mr. Adams’s request for a refund but failed to refund the fee.
13. Thereafter, respondent failed to communicate with Mr. Adams.
15. Respondent was retained by Lyle Schween, who paid respondent a $1,500 fee for representing him in a flood loss claim with Allstate Insurance Company.
16. Respondent failed to communicate with Mr. Schween.
17. The only action taken by respondent regarding the Schween matter was a telephone call to Allstate.
19.Respondent was retained by Marilyn Watson to represent her son in a criminal matter.
20. Respondent received a $2,800 fee from Ms. Watson.
21. Respondent failed to take any action regarding the criminal matter.
|s22. Respondent failed to further communicate with Ms. Watson.
23. Respondent failed to refund the fee Ms. Watson paid.
Respondent also stipulated that he violated Rules 1.3, 1.4, 1.8, 1.15(a), 1.15(d), 5.3(b), 8.4(a), 8.4(b), and 8.4(c) of the Rules of Professional Conduct.[6]

Hearing Committee Report

After considering the evidence and testimony presented at the hearing, the hearing committee accepted the parties’ stipulation of facts. As to the facts that were not stipulated to by the parties, the committee made the following findings:
1. As to whether or not respondent had notified the ODC of his relocation to New York for further drug treatment and whether or not he had cooperated with the ODC in its investigation, the committee determined the only evidence available was the unrefuted testimony of respondent. Although admittedly self-serving, he testified to the plausible explanation that the treatment facility did not notify him of attempts to send certified letters and that he had telephoned the ODC to advise of the situation. Furthermore, the deputy disciplinary counsel indicated earnest cooperation by respondent during her handling of the matter. This, along with respondent’s apparent success in rehabilitation and restitution, allowed the committee to give him the benefit of the doubt on this *869 issue and not find him guilty of the rule violation.
2. As to whether or not an attorney-client relationship existed between Ms. Barrios and respondent contemporaneous with the transaction that took place, which would be a requisite to finding a conflict of interest, the only evidence | flintroduced by the ODC was that of a former relationship. There was no direct or indirect evidence that respondent solicited the loan (or “investment in his practice”) while Ms. Barrios was a client. Therefore, and despite the abhorrent nature of soliciting the loan from a person as vulnerable as Ms. Barrios, the committee was unable to find a conflict of interest violation.
3. As to whether or not respondent had a substance abuse problem, which would be a potential mitigating factor in determining the appropriate discipline, in addition to the fact that respondent’s own testimony was uncontradicted that he had an addiction, the exhibits from the ODC actually corroborated his testimony.
Based on these facts, the committee determined respondent violated the following Rules of Professional Conduct: Rules 1.3 and 5.3(b) in the Graham matter; Rule 1.15(d) in the Adams matter; Rules 1.3 and 1.15(d) in the Schween matter; Rule 1.15(d) in the Watson matter; Rule 8.4(b) in the criminal matter; and Rule 8.4(c) in the Barrios matter. The committee determined that respondent intentionally violated duties owed to his clients, but found the actual injuries sustained by the clients were “not colossal.”
The committee found the following aggravating factors present: a pattern of misconduct, multiple offenses, vulnerability of the victim, and substantial experience in the practice of law (admitted 1982). The committee found the following mitigating factors present: absence of a prior disciplinary record, personal or emotional problems, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, mental disability or chemical dependency including alcoholism or drug abuse, imposition of other penalties or sanctions, and remorse. The committee also observed that respondent paid restitution to his clients in an effort |into rectify the consequences of his misconduct, but found this was done “years later” and was not “timely.”
After considering this court’s prior jurisprudence involving similar misconduct,[7] the committee recommended respondent be suspended from the practice of law for three years, “retroactive to the date of his interim suspension.”
Respondent is not presently on interim suspension, however, a fact which the ODC noted in support of its contention that the sanction recommended by the hearing committee is unduly lenient. The ODC also objected to the committee’s finding in mitigation that there is a causal connection between respondent’s substance abuse and his misconduct.

Disciplinary Board Recommendation

After reviewing these consolidated matters, the disciplinary board determined the hearing committee’s factual findings are supported by evidence adduced at the formal hearing. Based on those facts, and the joint stipulation of facts submitted by *870 the parties, the board determined respondent violated the Rules of Professional Conduct as follows:
Rule 1.3: This rule requires a lawyer to act with reasonable diligence and promptness in representing a client. The record reflects, however, that after he was retained, respondent failed to diligently and promptly attend to Mr. Schween’s flood loss claim, to the post-settlement payments to Ms. Graham’s medical providers, and to the various tasks of representing Ms. Watson’s son, who was a defendant in a criminal case.
| uRule 1.⅛: This rule requires a lawyer to communicate with a client and to give the client sufficient information to participate intelligently in the client’s matter. During respondent’s representation of Mr. Schween, he failed to communicate with his client. Respondent admitted that his only action in that matter was to make a single call to an insurer. Respondent also took no action on behalf of Ms. Watson’s son. However, the board found respondent did not violate Rule 1.4 in the Barrios matter because he had no attorney-client relationship with Ms. Barrios.
Rule 1.8: This rule requires the existence of an attorney-client relationship in order for certain transactions by the lawyer — such as loans — to present a conflict of interest. The committee specifically found respondent had no attorney-client relationship with Ms. Barrios at the time he solicited a loan from her. The ODC does not dispute this finding, which the board found was supported by the record. Therefore, even though respondent stipulated to a violation of Rule 1.8, the board rejected such a finding.
Rule 1.15(a): This rule requires a lawyer to safeguard client and third-party property. When the property consists of funds, they must be deposited into a trust account. According to respondent’s sworn testimony, he worked on Ms. Graham’s case with another attorney, and the funds recovered for Ms. Graham were deposited into the other attorney’s trust account. However, the other attorney disbursed one check to respondent for attorney’s fees and for third-party medical expenses. Instead of depositing this check into a trust account and then segregating his own funds from those of the medical provider and disbursing the medical provider’s funds from a trust account, respondent deposited the funds into his operating account. In fact, respondent had no trust account established to comply with the procedures of Rule 1.15(a).
| wRule 1.15(d): This rule requires an attorney to promptly deliver client and third-party funds. The board found the record reflects respondent failed to promptly return unearned fees to Mr. Adams, Mr. Schween, and Ms. Watson.
Rule 5.3(b): This rule requires that a lawyer having direct supervisory authority over a nonlawyer assistant make reasonable efforts to ensure that the assistant’s conduct is consistent with the lawyer’s professional responsibilities. The record reflects, however, that respondent signed three blank checks for his assistant to fill out and transmit to Ms. Graham’s medical providers. The assistant misappropriated the money to her own use instead. The board found that by giving the assistant three signed but blank checks, respondent did not reasonably supervise the assistant.
Rule 8.1(c): This rule requires a lawyer to cooperate with the ODC’s efforts to investigate disciplinary complaints. The committee found, and the ODC does not dispute, that respondent cooperated with the deputy disciplinary counsel currently handling this matter. The committee also noted that respondent testified he had cooperated with a previously assigned depu *871 ty counsel. The board therefore found the ODC failed to prove a violation of Rule 8.1(c) by clear and convincing evidence.
Rule 8.1(a): This rule prohibits a lawyer from violating or attempting to violate the Rules of Professional Conduct. By violating the foregoing rules, respondent violated Rule 8.4(a).
Rule 8Mb): This rule prohibits a lawyer from committing a criminal act. Respondent violated Rule 8.4(b) when he committed the crime of possessing cocaine.
Rule 8.1(c): This rule prohibits a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. The board found respondent violated Rule 8.4(c) only in connection with his solicitation of a loan from Ms. Barrios. Respondent sought to borrow money from Ms. Barrios under the pretext that she was [ ^investing in his law practice; however, only lawyers can be stakeholders in a law practice. Therefore, respondent violated Rule 8.4(c) in the Barrios matter.
The board determined respondent breached duties owed to his clients, who had a legitimate expectation that respondent would communicate with them, diligently represent them, and return to them any unearned fees. Respondent breached duties owed to the public, which has a legitimate expectation that a lawyer will not commit crimes, will refrain from soliciting improper loans/investments in law firms from nonlawyers, and will promptly deliver property owed to third parties. Respondent breached duties owed to the legal profession by failing to supervise his nonlawyer assistant. By the very nature of his misconduct, respondent acted knowingly and intentionally. Respondent’s actions also caused actual and serious injury. After reviewing the ABA’s Standards for Imposing Lawyer Sanctions, the board determined the applicable baseline sanction in this matter is disbarment.
The board found the following aggravating factors present: a dishonest or selfish motive, a pattern of misconduct, multiple offenses, vulnerability of the victims, substantial experience in the practice of law, and illegal conduct, including that involving the use of controlled substances. The board found the following mitigating factors present: absence of a prior disciplinary record, personal or emotional problems, timely good faith effort to make restitution or to rectify the consequences of the misconduct,[8] full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, imposition of other penalties or sanctions, and remorse. The board further recognized the mitigating factor of mental disability or chemical dependency, including alcoholism or drug abuse, specifically | urejecting the ODC’s argument that there no causal connection between respondent’s substance abuse and his misconduct. Here, respondent has adduced evidence that he was affected by chemical dependency, but that he has recovered. More specifically, the board pointed to documentary evidence from the Executive Director of the Lawyers Assistance Program (LAP) confirming that respondent entered into a LAP contract on March 18, 2009 and describing the facts of respondent’s chemical dependency treatment and rehabilitation since 2006.
The board found these mitigating factors “loom large” and are “closer to the present time than the aggravating factors,” warranting a downward deviation from the baseline sanction of disbarment *872 to a three-year suspension. The board further determined that the three-year suspension should be fully deferred. According to the board, the committee recommended a suspension retroactive to respondent’s “interim suspension” because the committee apparently believed it would be unduly punitive for respondent to serve an active period of suspension given the undisputed evidence that he did not practice law for three years while he was ineligible to do so. Noting that respondent was not actually placed on interim suspension, and that the public would be better protected with a deferral because respondent would be monitored under a program of supervised probation, the board recommended a two-year period of supervised probation to commence with respondent’s return to active status. Additionally, the board recommended that respondent’s trust and operating accounts be audited quarterly by a certified public accountant.
Although neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation, on November 9, 2010, this court ordered briefing addressing the issue of an appropriate sanction. Both respondent and the ODC filed briefs in response to the court’s order.
I,.DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La.10/2/09), 18 So.3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
The record reveals that, among other things, respondent induced a former client to make an improper loan/investment in his law practice, committed a criminal offense by possessing cocaine, and failed to refund unearned fees to several clients. Based on these facts, we find the record supports the conclusion that respondent has violated the Rules of Professional Conduct as found by the disciplinary board.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
11.Respondent’s conduct was knowing, if not intentional, and violated duties owed to his clients and the public. The following aggravating factors are present: a dishonest or selfish motive, a pattern of misconduct, multiple offenses, vulnerability of the victim, and substantial experience in the practice of law. The record supports the following mitigating factors: absence of a prior disciplinary record, personal or emotional problems, timely good faith effort to make restitution or to rectify the con sequences of the misconduct, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceed *873 ings, imposition of other penalties or sanctions, and remorse. We also agree with the hearing committee and the board that the mitigating factor of mental disability or chemical dependency, including alcoholism or drug abuse, is present.
Turning to the issue of an appropriate sanction, we note that In re: Steinhardt, 04-0011 (La.9/9/04), 883 So.2d 404, provides guidance in cases involving an attorney’s chemical dependency. In Steinhardt, an attorney was convicted of a misdemeanor charge of possession of marijuana, which she failed to report to the ODC. She also suffered from an addiction to marijuana, though at the time the case was before the court she had been drug free for three years. As a sanction, the disciplinary board recommended the attorney be suspended for three years. In rejecting that recommendation, we acknowledged the attorney’s substance abuse problems and the positive steps she had taken to address them, including her successful completion of a substance abuse treatment program and her entry into a LAP contract. Under these circumstances, we found it would be “excessively punitive” to impose a flat three-year suspension, as had been recommended by the disciplinary board. Rather, we deferred two years of the three-year suspension (resulting in a one-year actual suspension) and placed the attorney on probation.
| nHere, respondent has taken similar positive steps to address his addiction to cocaine. However, his conduct does not only involve the criminal conviction for cocaine possession; if that were so, perhaps the sanction imposed in Steinhardt would be appropriate. Rather, respondent’s misconduct includes additional misconduct not found in Steinhardt. Specifically, respondent engaged in a substantial amount of misconduct that involved five clients, some of whom were particularly vulnerable. Nevertheless, we acknowledge that respondent’s drug addiction contributed to his misconduct, he has since sought treatment for his drug problem, and he has been drug free since 2006.[9] Under these circumstances, we find a three-year suspension, with eighteen months deferred, is warranted.
Accordingly, we will suspend respondent from the practice of law for three years, with eighteen months deferred. We will further order respondent to either refund $2,800 to Ms. Watson or, if he previously refunded the money, provide proof of same.
DECREE
Upon review of the findings and recommendations of the hearing committee and the disciplinary board, and considering the record and briefs, it is ordered that Bernard J. Williams, Louisiana Bar Roll number 1646, be and he hereby is suspended from the practice of law for three years. It is further ordered that eighteen months of the suspension shall be deferred. It is further ordered that respondent shall refund $2,800 to Marilyn Watson or provide proof of the refund, if previously paid. All costs and expenses in the matter are assessed against respondent in accordance with haSupreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
*874 GUIDRY, J., dissents and would impose a three-year suspension with no time deferred.
CLARK, J., dissents and assigns reasons.

 Chief Justice Kimball not participating in the opinion.

. Respondent has been ineligible to practice law since September 11, 2006 for failure to pay bar dues and the disciplinary assessment. He is also ineligible for failing to file his trust account disclosure form.

. Respondent has since paid Mr. Adams $4,149.31, the original fee with interest.

. Respondent has since paid Mr. Schween $2,015.66, the original retainer amount with interest.

. Ms. Barrios died prior to respondent's repayment of the loan funds; however, respondent has paid the full amount of the loan with interest, $16,266.54, to the heirs of Ms. Barrios.

. Respondent placed Ms. Graham’s settlement funds in the trust account of another lawyer because he had not had a client trust account since 2003. Afterwards, respondent transferred the funds to his operating account.

. Some of the testimony by respondent at the hearing can be seen as contradicting the stipulated rule violations. For example, during the hearing, respondent testified that his attorney/client relationship with Ms. Barrios had ended prior to the time they entered into the loan agreement. A loan between an attorney and a person who is not a client is not covered by Rule 1.8.

. See In re: Bertucci, 08-1349 (La.9/26/08), 990 So.2d 1275 (fully deferred two-year suspension, subject to a two-year period of probation with conditions, imposed upon an attorney who participated in a pre-trial diversion program after he was detained by the police and found to be in possession of illegal drugs; the attorney successfully completed a drug treatment program and enrolled in LAP).

. The board rejected the committee’s finding that restitution was not made timely, noting that respondent paid restitution after completing several years of rehabilitative treatment for substance abuse,

. As noted earlier, the record indicates respondent entered into a recovery contract with LAP in March 2009. We strongly encourage respondent to continue to pursue treatment for his substance abuse problems and avail himself of the resources of LAP. This court will carefully review respondent’s efforts at rehabilitation if and when he applies for reinstatement after serving his suspension. See Supreme Court Rule XIX, § 24(E)(3).