*292 ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
_[jThis disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Leslie R. Leavoy, Jr., an attorney licensed to practice law in Louisiana. '
UNDERLYING FACTS

Count I

In October 2003, Mary McRae retained DeRidder attorney Tony Bennett to represent her in a suit against her former husband alleging that he had breached a confidentiality clause in their divorce agreement. Ms. McRae paid Mr. Bennett a $5,000 advance minimum fee to handle the matter. Several months later, Mr. Bennett determined that he could no longer represent Ms. McRae due to a conflict of interest, and respondent agreed to assume her representation. In May 2004, Mr. Bennett transferred the $5,000 advance fee.paid by Ms. McRae to respondent.
Respondent represented ‘ Ms. McRae through the fall of 2005, but failed to move her case forward and failed to communicate with her regarding the status of the matter. Indeed, when pressed by his client for information, respondent either ignored her inquiries or misled her by providing false information. For example, respondent told Ms. McRae that he had filed her breach of contract lawsuit, but she subsequently learned from the clerk of court’s office that no suit was pending. Thereafter, Ms. McRae recorded a telephone conversation with respondent in 12which he told her that her former husband had a “spy” in the clerk of court’s office and that the lawsuit he had prepared was either sitting on someone’s desk un-filed or it had been assigned a new docket number. Respondent then promised to file a new lawsuit for Ms. McRae the following day, but he failed to do so.
In October 2005, Ms. McRae discharged respondent and requested that her file and fees be returned. When respondent did not comply with this request, Ms. McRae lodged a complaint against him with the ODC in December 2005. Respondent ultimately did not refund Ms. McRae’s $5,000 fee until February 2006, and she did not receive her file until June 2006.
The ODC alleged that respondent’s conduct in the McRae matter violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.16(d) (obligations upon termination of the representation), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

Count II

On January 7, 2010, respondent was arrested in Rapides Parish and charged with DWI, careless operation of a motor vehi- *293 ele, and obstruction of a court order. On October 4, 2010, respondent voluntarily admitted himself to an inpatient substance abuse treatment program at the Palmetto Addiction Recovery Center in Rayville, Louisiana. Respondent was discharged from Palmetto on January 11, 2011 with a diagnosis of alcohol dependence. Following his discharge, the Palmetto staff recommended that respondent enter into a recovery agreement with the Lawyers Assistance Program (“LAP”); however, respondent “didn’t see any reason” to execute the contract and thus did not do so.
3In March 2011, respondent pleaded guilty to the DWI charge pursuant to the provisions of La.Code Crim. P. art. 894; the remaining charges were dismissed. Respondent was placed on unsupervised probation for one day and ordered to pay a fíne and court costs.
The ODC learned of respondent’s DWI conviction in April 2011 and commenced an investigation. In May 2011, the ODC notified respondent that a complaint had been opened against him, and instructed him to contact LAP to arrange for a substance abuse evaluation. On June 8, 2011, respondent and his counsel met with the Executive Director of LAP, J.E. “Buddy” Stockwell, III. On June 13, 2011, Mr. Stockwell advised respondent that he would be required to undergo a three-day inpatient professional assessment at Palmetto before entering into a LAP contract. Respondent did not schedule the evaluation with Palmetto at that time.
Approximately two weeks later, on July 1, 2011, respondent gave a sworn statement to the ODC. During the statement, respondent admitted that he had not been evaluated by Palmetto since receiving Mr. Stockwell’s June 13th letter, nor had he contacted Palmetto to arrange for an evaluation, as directed by Mr. Stockwell. Asked whether he had any intention of doing so, respondent replied, “I have no intentions what — one way or the other.” Later during the sworn statement, respondent testified he was willing to go to Palmetto for an evaluation. He thereafter scheduled the evaluation twice but can-celled both times, citing family emergencies.
Meanwhile, on August 15, 2011, the ODC received a letter from Judge C. Kerry Anderson of the 36th Judicial District Court for the Parish of Beauregard, where respondent was then a public defender, concerning respondent’s persistent abuse of alcohol. Judge Anderson reported that respondent was scheduled to appear in his court at 9:00 a.m. on August 5, 2011 for “felony pre-trial day.” There |4were 42 cases set for hearing on that day, and respondent was counsel of record in 11 of the cases. When court recessed shortly after 10:00 a.m., respondent still had not made an appearance, so Judge Anderson inquired of respondent’s secretary whether she knew his whereabouts. The secretary reported that she had spoken with respondent at 8:45 a.m., when he had said he was on his way to court, but that she had been unable to reach him since then. Concerned for respondent’s well-being, Judge Anderson dispatched the Chief Public Defender to check on respondent. A while later, Judge Anderson received a report that respondent had been located at his house, but that he was in no condition to appear in court that day because he was “in an intoxicated condition, passed out, partially-clothed, half-conscious in his bedroom.” [1]
*294 Judge Anderson also advised the ODC that there had been other occasions when he suspected respondent had been drinking when he appeared in court, and that such occurrences “have become more frequent over the last couple of months.” Judge Anderson stated that he had twice called respondent into his office to warn him “that his further appearance under the influence of alcohol would not be tolerated.” On August 10, 2011, Judge Anderson signed an order directing the Public Defender’s Office to reassign all pending criminal and juvenile cases assigned to respondent.[2]
|sOn August 23, 2011, respondent was admitted to Palmetto for a three-day inpatient substance abuse evaluation. Following his evaluation, respondent was diagnosed as suffering from alcohol dependence with relapse. Respondent remained at Palmetto for relapse treatment until October 24, 2011. Subsequent to his discharge from treatment, respondent entered into a five-year LAP recovery agreement dated November 28, 2011. Respondent has been in full compliance with the requirements of his LAP agreement since that time.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 8.4(b) (commission of a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer) and 8.4(d) (engaging in conduct prejudicial to the administration of justice).
DISCIPLINARY PROCEEDINGS
In April 2012, the ODC filed two counts of formal charges against respondent. Respondent answered the formal charges, and the matter was set for a formal hearing before the hearing committee. Prior to the hearing, respondent and the ODC entered into a joint stipulation of facts and rule violations. In this document, respondent stipulated to the essential facts alleged by the ODC and admitted that he violated the Rules of Professional Conduct as charged, except that respondent did not stipulate to a violation of Rule 8.4(c) in the McRae matter.

Hearing Committee Report

The hearing committee conducted a hearing in October 2012. This was primarily a hearing in mitigation; however, the parties did present evidence and testimony concerning the few disputed issues which remain. In addition, respondent presented witnesses who confirmed that he is in full, sustained | (¡remission from chemical dependency and that he has been very compliant with his recovery.
Considering the evidence and testimony presented at the hearing, as well as the parties’ stipulations, the hearing committee made factual findings consistent with the underlying facts set forth above. In Count I of the formal charges, respondent misled Ms. McRae regarding the status of *295 her case in order to conceal his lack of diligence in failing to file her lawsuit. Furthermore, after Ms. McRae dismissed respondent for failing to move her case forward, he did not promptly refund the fees she had paid or return her file in a timely manner. In connection with Count II, respondent was convicted of DWI and was too intoxicated to appear in court for a felony pre-trial hearing day. The committee found this conduct violated the Rules of Professional Conduct as charged in the formal charges.
Respondent stipulated that he violated duties owed to his clients, the public, and the legal system, causing potential harm. He also stipulated that he acted knowingly, if not intentionally, in Count I, and that he acted knowingly in Count II. The committee determined that the applicable baseline sanction in this matter is suspension.
In aggravation, the committee found multiple offenses and substantial experience in the practice of law (admitted 1979). The committee found the following mitigating factors are present: absence of a prior disciplinary record,[3] full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, character or reputation, and chemical dependency.[4]
The committee concluded:
|7Because of Respondent’s successful rehabilitation to date, his cooperation in the disciplinary proceeding, minimal harm to clients and no record of previous misconduct, this committee recommends that the Respondent be suspended from the practice of law for a period of 18 months with all but six months deferred, subject to Respondent’s successful completion of the following supervisions:
1. The completion of all terms and conditions of his contract with the Lawyers Assistance Program;
2. Respondent’s continued participation in Alcoholics Anonymous for the period of his Lawyers Assistance Program contract; and
3. Respondent successfully complying with the requirements of both programs and payment of all costs associated with this matter.
Respondent filed an objection to the hearing committee’s report and recommendation, asserting that the committee erred in failing to find certain mitigating factors and in its assessment of the weight to be given to the mitigating circumstances. Respondent also contended that the actual period of suspension recommended by the committee is too harsh, and that the appropriate sanction in this matter is a fully deferred period of suspension with probation and continued LAP monitoring. For its part, the ODC generally agreed with the hearing committee’s report, although it did take issue with some of the findings relating to aggravating and mitigating factors.

Disciplinary Board Recommendation

After review, the disciplinary board found that the hearing committee’s factual findings are not manifestly erroneous, as they are largely based upon respondent’s *296 stipulations. The board also found respondent violated the Rules of Professional Conduct as alleged in the formal charges.
|sThe board determined that respondent knowingly and intentionally violated duties owed to his clients, the public, and the profession. Respondent caused actual injury, albeit minimal, and further there was a substantial risk of harm to the public and the profession if his alcoholism remained unchecked and his conduct continued. According to the ABA’s Standards for Imposing Lawyer Sanctions, the applicable baseline sanction in this matter is suspension.
In aggravation, the board found a dishonest or selfish motive, multiple offenses, and substantial experience in the practice of law. In mitigation, the board' found the following factors: absence of a prior disciplinary record, personal or emotional problems, character or reputation, chemical dependency, delay in the disciplinary proceedings (as to Count I only), and remorse.
Turning to the issue of an appropriate sanction, the board acknowledged that the sanction recommended by the hearing committee (an eighteen-month suspension with all but six months deferred) is within the range of appropriate sanctions for the misconduct at issue here. However, the board felt a lengthier but fully deferred suspension is warranted in this case based upon the mitigating circumstances present, most notably the “compelling” evidence of respondent’s rehabilitation from alcoholism.
Based on this reasoning, the board recommended that respondent be suspended from the practice of law for two years, fully deferred, subject to respondent’s successful completion of a period of probation coinciding with a new five-year LAP agreement. The board also recommended that respondent be assessed with the costs and expenses of this matter.
Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
[ .DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La.10/2/09), 18 So.3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
The record supports a finding that respondent misled his client regarding the status of her case in order to conceal his lack of diligence in failing to file her lawsuit. Furthermore, after the client discharged respondent for failing to move her case forward, he did not promptly refund the fees she had paid or return her file in a timely manner. In connection with Count II, respondent was convicted of DWI and was too intoxicated to appear in court for a felony pre-trial hearing day. Based on these facts, respondent has violated the Rules of Professional Conduct as found by the disciplinary board.
 Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high *297 standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
| inRespondent has stipulated that his conduct was both knowing and intentional and caused both actual and potential harm. The applicable baseline sanction in this matter is suspension.
The following aggravating factors are present: a dishonest or selfish motive, multiple offenses, and substantial experience in the practice of law (admitted 1979). The following mitigating factors are supported by the record: personal or emotional problems, character or reputation, chemical dependency, and remorse.
In determining the appropriate sanction in this case, we begin with the well-recognized proposition that chemical dependency may cause a lawyer to commit acts of professional misconduct that would not have occurred but for his impairment. Louisiana State Bar Ass’n v. Longenecker, 538 So.2d 156, 163 (La.1988) (on rehearing). When there is an obvious causal connection between the substance abuse and the misconduct, and the lawyer has made meaningful efforts to address his problem, we have often chosen to impose a more lenient sanction than would otherwise be called for. See, e.g., In re: Williams, 10-1972 (La.1/7/11), 52 So.3d 864 (lawyer suspended from the practice of law for three years, with eighteen months deferred, for misconduct including his conviction of possession of cocaine; the lawyer’s drug addiction contributed to his misconduct, but he sought treatment and signed a LAP contract); In re: Steinhardt, 04-0011 (La.9/9/04), 883 So.2d 404 (lawyer suspended for three years, with two years deferred, following her conviction of possession of marijuana; the mitigating circumstances included her successful recovery from her marijuana addiction and her entry into a recovery agreement with LAP); In re: Doyle, 07-2015 (La.4/4/08), 978 So.2d 904 (baseline sanction for the lawyer’s misconduct, including conversion of client and third-party funds, was unquestionably disbarment, but the mitigating circumstances surrounding his successful recovery from an addiction to |n drugs and alcohol warranted a downward deviation from the baseline to a three-year suspension).
Here, it is abundantly clear that respondent’s misconduct (his alcohol-related criminal conviction and failure to appear for court as well as his neglect of a client matter) is directly related to his substance dependence. However, respondent has demonstrated a meaningful and sustained period of successful rehabilitation from his chemical dependency, and his recovery has made a recurrence of his misconduct very unlikely. Notably, respondent has been sober for more than two years since completing the treatment program at Palmetto. He has also been subject to a LAP agreement since November 2011, and the director of the program reports that respondent’s performance under the agreement has been exemplary to date.
Accordingly, we will accept the board’s recommendation and suspend respondent from the practice of law for two years, fully deferred, subject to his successful completion of a period of probation to coincide with a newly executed five-year LAP agreement. We caution respondent that any violation of the conditions of probation, or any misconduct during the probationary period, may be grounds for mak *298 ing the deferred suspension executory, or imposing additional discipline, as appropriate.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Leslie R. Leavoy, Jr., Louisiana Bar Roll number 8186, be and he hereby is suspended from the practice of law for two years. This suspension shall be deferred in its entirety, subject to respondent’s successful completion of a period of probation governed by the conditions set forth in this opinion. All costs and expenses in the matter are 112assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
CLARK, J., dissents and assigns reasons.

. Upon learning this information, Judge Anderson asked other attorneys from the Public Defender's Office to meet with respondent’s clients, and the defendants either proceeded to enter guilty pleas or had their cases re-fixed to a later date. As a result of these *294 efforts by others, respondent's clients were not specifically harmed by his failure to appear in court on August 5, 2011, although respondent did stipulate that he had wasted the time and resources of the trial court.

. On August 18, 2011, the ODC filed a petition for interim suspension for threat of harm to the public based upon the foregoing facts. After deferring consideration of the petition for several months to determine the progress of respondent’s treatment at Palmetto, we ultimately denied the petition on December 16, 2011. However, our order specifically instructed respondent to “fully and completely adhere to all terms of the recovery agreement he executed with the Lawyers Assistance Program, and such other conditions as may be imposed upon him by the Lawyers Assistance Program,” or face the possibility of further proceedings. In re: Leavoy, 11-1824 (La. 12/16/11), 76 So.3d 422.

. Respondent was issued a formal private reprimand in 1990, and thus it cannot be said that he has no prior discipline for purposes of mitigation. Nevertheless, the ODC acknowledges that due to the remoteness of this disciplinary offense, it should not be considered an aggravating factor.

. The committee was favorably impressed by respondent’s efforts at recovery from his alcoholism, and found in mitigation that he has demonstrated interim rehabilitation from chemical dependency. We note, however, that interim rehabilitation is no longer recognized as a mitigating factor in the ABA Standards.